STATE of Texas, et al., Appellants,

v.

SUN REFINING & MARKETING, INC., et al., Appellees.

No. 3–87–064–CV.

Court of Appeals of Texas, Austin.

Nov. 4, 1987.

Rehearing Denied Dec. 2, 1987.

Jim Mattox, Atty., Gen., Harriet D. Burke, Asst. Atty. Gen., Austin, for appellants.

Edward J. Hazzouri, Pro Hac Vice, Scranton, Pa., for Sun Refining and Marketing Co.

David A. Hampel, Dallas, for Sun Exploration and Production Co.

SHANNON, Chief Justice.

Sun Refining & Marketing, Inc., and Sun Pipe Line Co., appellees, filed suit in the district court of Travis County to recover $124,150.24 in franchise taxes paid under protest to the Comptroller of Public Accounts. After a bench trial, the district court rendered judgment that appellees recover such sum. This Court will affirm that judgment.

The franchise tax is one imposed on the value of the privilege to transact business in Texas. *Bullock v. National Bancshares Corporation,* 584 S.W.2d 268, 270 (Tex.1979). The amount of the franchise tax imposed on a corporation transacting business is based upon the corporation's taxable capital which consists of the sum of the corporation's "stated capital" and "surplus." Tex.Tax Code Ann. §§ 171.002, 171.101 (1982).

In this appeal, the Comptroller concluded, after audit, that appellee Sun Refining and Marketing had improperly characterized certain contingent accounts as liabilities thereby excluding them from surplus for franchise tax purposes. Accordingly, the Comptroller compelled Sun Refining and Marketing to include as assets in surplus its: (1) entitlement restatement account for 1980; (2) self-insurance account; and (3) deferred employee-pension account. The Comptroller further required Sun Refining and Marketing to include in surplus the undistributed earnings of a subsidiary corporation, Puerto Rico Sun Oil Company. In addition, the Comptroller determined that Sun Pipe must include in surplus its deferred employee-pension account.

In general, the district court concluded that the purpose of the franchise tax statute is to require a corporation to compute its taxable surplus based upon economic reality, that is, the statute contemplates that the tax be determined upon the true financial condition of the corporation. The district court reasoned that once it has been determined that the events upon which a liability is based have occurred and that the amount of the liability is subject to a reasonable estimate, the corporation may exclude that liability from surplus.

## THE ENTITLEMENT RESTATEMENT ACCOUNT

The district court found that Sun Refining and Marketing was the subject of a federally mandated program for the year 1980 that required it to make payments to other oil companies. The amount of these payments was a function of the price Sun Refining and Marketing paid for crude oil

it refined and the average prices paid by it and other oil companies for crude. The payments under the "Entitlement Program" were made monthly. There was a delay, however, between the close of business for which the obligation was incurred, on the one hand, and the collection of the necessary price information and completion of the calculations that formed the basis for computing the amount Sun Refining and Marketing was to pay for any particular month on the other. At the close of its fiscal and calendar year, December 31, 1980, the events that determined Sun Refining and Marketing's liability had occurred, but the information necessary to determine the prices it and others had paid for crude oil was not then available for the months of November and December 1980. As a result, Sun Refining and Marketing had to estimate the amount of its liability under the program for calculating its net assets at the end of the year. Sun Refining and Marketing estimated the amount of its Entitlement Program liability for the last two months of the year to be $48,841,-000. The estimate was not overstated and, in fact, when the information was available and calculations complete, Sun Refining and Marketing was obligated to pay $58,-883,534, rather than $48,841,000.

### SELF–INSURANCE ACCOUNT

During the time in question, Sun Refining and Marketing participated in a self-insurance program to pay claims arising in the course of business. After an accident occurred and all the events upon which the liability of a participating company was based had transpired, an insurance adjusting firm estimated the amount for which the company would be liable. In the case of Sun Refining and Marketing, the company recorded an amount equal to the estimated liability on its books during the period between the date the events giving rise to the liability had occurred and the time the liability was paid. The parties stipulated that the amounts of these estimates were reasonable. Sun Refining and Mar-

keting's method of recording these liabilities was in accordance with generally accepted accounting principles. Because the events giving rise to the liabilities had occurred and since the amount of the liabilities were subject to reasonable estimates, the company's failure to include these sums as debts in calculating taxable surplus would have given a distorted view of the company's financial condition.

With respect to the contingent liability reserve accounts, the State's position for reversal of the judgment may be summarized as follows: The term "surplus" is not defined in the franchise tax statute. By rule 3.405, the Comptroller defines surplus as the excess of the net assets of a corporation over its stated capital. The net assets are the "total assets minus total debts." The Comptroller's rule, however, does not define the debt or liability component of surplus. As established by the testimony of an employee, Teresa Van DeWolle, the Comptroller's administrative construction of the term "debt" in this context is that "[f]or franchise tax purposes, a debt is certain in time of payment and amount to be paid and it's contractual in nature."[1] Under the Comptroller's view, a contingent liability reserve account, no matter how accurate or reasonable, can never be a debt or liability for purposes of determining surplus.

The Comptroller suggests that, in the absence of specific statutory directive as to the elements of surplus, his administrative policy and treatment of contingent liability accounts is binding. The Comptroller's argument, however, fails to account for contrary judicial treatment of analogous contingent liability accounts. In *Huey & Philip Hardware Co. v. Sheppard,* 151 Tex. 462, 251 S.W.2d 515 (1952), the Supreme Court concluded that a reserve for bad debts account could be excluded from the corporation's surplus for franchise tax purposes. *Id.* 251 S.W.2d at 516.

---

**1.** It may be observed, for whatever its value, that there is some proof that the Comptroller's administrative policy regarding treatment of contingent liability accounts has not been consistently followed over the years.

In *Calvert v. Houston Lighting & Power Company*, 369 S.W.2d 502 (Tex.Civ.App. 1963, writ ref'd n.r.e.), the Court considered whether a corporation could exclude a deferred federal income tax account from surplus. The appellees, four public utilities, had established these accounts in response to the accelerated depreciation allowed by Congress with regard to new facilities. This type of depreciation allowed for tax savings in the short run but resulted in increased taxes in later years. These deferred tax liability accounts insured that corporations using the accelerated depreciation option could meet their tax obligations in the long run. *Id.*

Following *United North & South Development Co. v. Heath*, 78 S.W.2d 650 (Tex. Civ.App.1934, writ ref'd), the Court focused upon whether the funds reflected in the account were available for the use of the company. *Calvert*, 369 S.W.2d at 504. In United North & South Development Co., the Court noted that "since such tax is payable in advance, the State may, in computing such tax, look to the property owned by the corporation and available to it, for use during the year in carrying on its business. Such was clearly, we think, the legislative intent." *Heath*, 78 S.W.2d at 652. The Court, in *Calvert v. Houston Light & Power Company*, concluded that "the deferred tax represents an expense and never gets into surplus." *Id.* at 509.

The Comptroller's view of the debt or liability component of surplus as expressed through his witness is plainly at odds with the holdings of the appellate courts in *Huey, supra,* and *Calvert, supra.*[2] A bad debts account or a deferred income tax account is no more "certain in time of payment and account to be paid" than is the entitlement restatement or the self-insurance accounts here under consideration. Likewise, a bad debt account or a deferred income tax account is hardly "contractual in nature."

■ In this appeal, the entitlement restatement account and the self-insurance

account were based upon existing liabilities and were admittedly reasonable estimates. Failure to include these obligations as debts or liabilities in determining appellees' surplus overstated appellees' financial condition. Sun Refining and Marketing would be placing its organizational stability in serious peril were it to use these funds in any way other than to meet its expenses. The points of error complaining of the judgment, in this respect, are overruled.

This Court will, likewise, overrule appellants' points of error complaining that the deferred employee pension account should have been included in surplus.

### DEFERRED EMPLOYEE PENSION ACCOUNT

■ Appellees established a pension plan for their employees in 1965. Under the terms of the pension plan, appellees were obligated to pay pension benefits to employees for work which had been performed before the creation of the plan (past services). The company chose to meet its obligations for these past services by disbursing funds to a pension trust over a ten-year period. The appellees, however, sought to avoid the distortion in earnings which would have resulted from "expensing" the past services cost over a ten-year period when they were actually related to a much longer period. Appellees avoided this potential problem by "expensing" these past services costs over a thirty-year period, a generally accepted accounting practice.

This accounting technique resulted in a situation where the appellees had actually paid more to the pension trusts than was reflected on their books. The appellees reflected this difference on their ledgers by an account labelled "Prepaid and Deferred Charges—Pension Costs".

Although the "pension costs" account is denominated as an asset on appellees' records, appellees contend that it is merely a mechanism used to balance their books.

**2.** The Comptroller has endeavored unsuccessfully to hobble application of the holdings in the above opinions by excepting out from operation of his rule the exact fact situation involved in each opinion.

The account, appellees urge, does not represent property which is available for use but rather reflects funds which have already been paid into a trust. The funds are not accessible to appellees unless the pension plan is terminated, an event which is unlikely.

Appellees rely upon *Heath, supra.* As indicated above, *Heath* may be viewed as authority for the premise that before an account may be included in surplus, it must be determined whether the funds in the account were available for use by the corporation. Because the appellees have already paid the funds reflected in the "pension costs" account into the trust, those monies are plainly not available for use by appellees.

Finally, this Court concludes that the district court properly determined that the retained pre-acquisition earnings of appellees' subsidiary should not be included in appellees' surplus for franchise tax purposes.

### UNDISTRIBUTED EARNINGS OF PUERTO RICO SUN OIL COMPANY

 In January 1980, Sun Company, Inc. transferred all of the stock of Puerto Rico Sun Oil to Sun Refining and Marketing in exchange for stock of Sun Refining and Marketing. At the time of the acquisition of Puerto Rico Sun, the subsidiary had substantial undistributed (retained) earnings. The Comptroller required Sun Refining and Marketing to include in surplus the undistributed earnings of Puerto Rico Sun.

As authority for this determination, this Court relies upon, *Bullock v. Enserch Corp.*, 583 S.W.2d 950 (Tex.Civ.App.1979, writ ref'd n.r.e.). As we understand *Enserch*, the Court concluded that the retained earnings of a subsidiary corporation should not be included in the surplus of the parent corporation inasmuch as such could result in a tax of those earnings in both the parent and the subsidiary corporation. Although it is true, as argued by the Comptroller, the retained earnings of the subsidiary in *Enserch* were *post*-acquisition instead of *pre*-acquisition, this Court fails to apprehend that such distinction makes any difference.

The Comptroller has other points which have been considered and inasmuch those have been found wanting in merit, they are overruled.

The judgment is affirmed.

GAMMAGE and CARROLL, JJ., concur.