STATE of Texas, et al., Appellants,

v.

SHELL OIL COMPANY, Appellee.

No. 3–87–104–CV.

Court of Appeals of Texas, Austin.

March 2, 1988.

Jim Mattox, Atty. Gen., Christine Monzingo, Asst. Atty. Gen., Austin, for appellants.

Gilbert J. Bernal, Jr., Shapiro, Edens & Cook, Austin, Elizabeth C. Burton, Houston, for appellee.

Before SHANNON, C.J., and GAMMAGE and CARROLL, JJ.

SHANNON, Chief Justice.

Shell Oil Company, appellee, filed suit in the district court of Travis County to recover franchise taxes paid under protest to the Comptroller of Public Accounts. After trial to the court, the district court rendered judgment that Shell recover $335,951.54. This Court will affirm the judgment.

The franchise tax is one imposed on the value of the privilege to transact business in Texas. *Bullock v. National Bankshares Corporation,* 584 S.W.2d 268, 270 (Tex.1979). The amount of the franchise tax imposed on a corporation transacting business is based upon the corporation's taxable capital which consists of the sum of the corporation's "stated capital" and "surplus." Tex. Tax Code Ann. §§ 171.002, 171.101 (1982).

The Comptroller concluded after audit that Shell, for years 1979 through 1982, had improperly treated certain "Contra-asset" accounts as reductions of taxable surplus for franchise tax purposes. The Comptroller determined that these contra accounts were "surplus reserve" accounts and added them to the surplus as reported by Shell in its franchise tax returns for each year in issue. This action substantially increased Shell's tax liability.

Shell pursues as its principal business the exploration for, and development, production, transportation, purchase, and marketing of crude oil and natural gas, and the purchase, manufacture, and marketing of oil and chemical products. In accordance with Generally Accepted Accounting Principles (GAAP), Shell follows the "successful efforts" method of accounting on its books and records of account. Based upon and as required under the successful efforts method of accounting and GAAP, Shell charges a portion of the costs of nonproducing leaseholds or properties to expense through periodic amortization based primarily upon its historical experience in establishing rates to fully amortize those leases that may be unproductive. Such contra-asset accounts, or amortization accounts, reflect a certain impairment in value of the underlying leasehold asset.

The district court determined as a fact *inter alia* that Shell's contra-asset accounts for amortization of unproven leaseholds "achieve the goal of accurately measuring the value of the corporation's net worth." The district court concluded as a matter of law that Shell's contra-asset accounts for amortization of unproven leaseholds accurately reflected the corporation's financial condition for the years concerned. The court concluded further that the Comptroller's disallowance of the contra-asset accounts in question resulted in a franchise tax levy based upon a figure that did not accurately reflect Shell's financial condition.

By fourteen points of error, the Comptroller attacks the numerous findings of fact and conclusions of law filed by the district court in support of its judgment. By points of error one through six, the Comptroller raises the ultimate issue to be determined: whether a contra-asset account that reflects an impairment in value of leases or properties must be included in surplus for franchise tax purposes.

The Comptroller's proof was that for more than twenty-five years that office has consistently followed a policy of not reducing surplus by "estimated writedowns." As this Court understands the Comptroller's argument, contra-asset accounts such as those used by Shell, no matter how accurate or reasonable, may not be employed to reduce surplus for franchise tax purposes. Instead, the Comptroller insists that the nonproducing asset cannot be calculated as a loss until the moment the oil company "abandons, surrenders, or otherwise transfers the lease."

The Comptroller advanced similar arguments in *State of Texas v. Sun Refining & Marketing, Inc.,* 740 S.W.2d 552 (Tex.App.1988, error denied) recently decided by this Court. In *Sun,* the Comptroller challenged certain contingent accounts characterized by Sun as liability accounts and hence not included in surplus. In *Sun,* the Comptroller insisted that such accounts could not represent "debts" because they

were only estimates and not "sums certain." This Court rejected the Comptroller's position pointing out that the purpose of the franchise tax statute is to require a corporation to compute its taxable surplus based upon economic reality. In other words, the franchise tax statute contemplates that the tax be determined upon the true financial condition of the corporation. We concluded in *Sun* that the taxpayer's estimates, as indicated in the contingent accounts, were reasonable and that its failure to include those sums as debts in calculating taxable surplus would project a distorted view of the taxpayer's financial condition.

The Comptroller's argument in this appeal is also at odds with the holdings of the appellate courts in *Huey & Philip Hardware Co. v. Sheppard*, 251 S.W.2d 515 (Tex.1952), and *Calvert v. Houston Lighting & Power Company*, 369 S.W.2d 502 (Tex.Civ.App.1963, writ ref'd n.r.e.). In *Huey & Philip Hardware Co. v. Sheppard, supra,* the Supreme Court concluded that a reserve for bad debts account could be excluded from the corporation's surplus for franchise tax purposes. *Id.* at 516. As this Court understands, a reserve for bad debts is a contra-asset account similar in theory and practice to the amortization account for nonproducing leaseholds. A reserve for bad debts is a valuation account that is used on a corporation's balance sheet to reflect, out of the total investment that the company has in accounts receivable, what the company determines to be a realistic value of those accounts as of a certain point in time.

In *Calvert v. Houston Lighting & Power Company*, 369 S.W.2d 502 (Tex.Civ.App. 1963, writ ref'd n.r.e.), the Court considered whether a corporation could exclude a deferred federal income tax account from surplus. The appellees, four public utilities, had established these accounts in response to the accelerated depreciation allowed by Congress with regard to new facilities. This type of depreciation allowed for tax savings in the short run but resulted in increased taxes in later years. These deferred tax liability accounts insured that corporations using the acceler-

ated depreciation option could meet their tax obligations in the long run. *Id.*

Following *United North & South Development Co. v. Heath*, 78 S.W.2d 650 (Tex. Civ.App.1934, writ ref'd), the Court focused upon whether the funds reflected in the account were available for the use of the company. *Calvert*, 369 S.W.2d at 504. In *United North & South Development Co.,* the Court noted that "since such tax is payable in advance, the State may, in computing such tax, look to the property owned by the corporation and available to it, for use during the year in carrying on its business. Such was clearly, we think, the legislative intent." *Heath*, 78 S.W.2d at 652. The Court, in Calvert v. Houston Lighting & Power Company, concluded that "the deferred tax represents an expense and never gets into surplus." *Id.* at 509.

It is plain that the amounts reflected in Shell's contra-asset accounts were not available for use by the company. As noted above, the amounts reflect an impairment in value rather than funds which have been set aside.

By points of error seven and eight, the Comptroller asserts that the district court's determination that Shell's contra-asset accounts accurately reflected Shell's financial condition was supported by no evidence or alternatively by insufficient evidence. In considering a "no-evidence point," the reviewing court must reject all evidence contrary to the findings and consider only the facts and circumstances which tend to support the finding. *Renfro Drug Co. v. Lewis*, 235 S.W.2d 609 (Tex.1950). In reviewing factual insufficiency points of error, the court considers all the evidence to determine whether the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 244 S.W.2d 660 (Tex.1951).

In support of his points, the Comptroller emphasizes that his witness, Deakin, testified that Shell's surrenders for an actual year do not match the actual impairment in value reflected in the annual reserve amount for a given year. Furthermore,

Deakin stated that this disparity might result in a distortion in Shell's franchise tax which might not be made up in subsequent years.

Shell responds that the purpose of GAAP, pursuant to which Shell calculates its reserves for nonproducing leaseholds, is to reflect the impairment of Shell's *total investment* in nonproducing leaseholds at a given point in time, not for one year. Such calculation is made in light of Shell's knowledge that some of its leaseholds are not going to prove productive. The impairment in value in a leasehold will often precede the actual surrender of the leasehold. Although the addition to the reserves for nonproducing leaseholds is not intended to reflect actual surrenders for a specific year, Shell's proof suggests that it does, however, reflect the total decrease in value of all the nonproducing reserves. This addition to the reserves also includes the final incremental decrease in value of leases which will be surrendered in that period as well as an estimate of the decrease in value of many leases which will continue to be held.

Over a period of several years, Shell suggests, the actual surrenders and reserve accounts should approximate one another. Indeed, Shell's Exhibit No. Six demonstrates that over an eight-year period actual surrenders and reserves are approximately equal, with only a four and one-half percent variance in the totals for "surrenders" and the "amortization provision."

Shell introduced an abundance of evidence which demonstrates that its model for calculating the amounts in the contra-asset accounts for nonproducing leaseholds leads to accurate estimates. In fact, a systems analyst for the Comptroller admitted that Shell's model may be very accurate. The points of error are overruled.

Shell's contra-asset accounts for amortization of unproven leaseholds were shown to be based upon reasonable estimates and to accurately reflect the corporation's financial condition. *State of Texas v. Sun Refining & Marketing, Inc., supra.* The Comptroller's refusal to recognize those accounts in determining Shell's surplus dis-

torted Shell's financial condition for franchise tax purposes.

In view of our disposition of points of error one through nine, it is unnecessary to consider the balance of the points and each is here overruled.

The judgment is affirmed.