IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 



ON MOTION FOR REHEARING


 




NO. 3-90-231-CV





PHYLLIS WILBURN,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE


 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT



NO. 444,943, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING



 





 We withdraw our opinion and judgment dated November 13, 1991, and substitute
the following in their place. 

 The question presented is whether the use of the term "debt" in § 171.255 of the
Franchise Tax Act (1) includes liability for delinquent unemployment taxes. 



I. BACKGROUND


 Travelcorp International, Inc. (Travelcorp), a Texas corporation, failed to pay its
franchise taxes that were due March 15, 1986. 1981 Tex. Gen. Laws, ch. 389, § 171.001, at
1691 (Tex. Tax Code Ann. § 171.001, since amended). (2) On June 16, 1986, the comptroller
forfeited Travelcorp's corporate privileges. (3) Upon forfeiture, each director or officer becomes
liable for certain debts of the corporation:



If the corporate privileges of a corporation are forfeited for the failure to file a
report or pay a tax or penalty, each director or officer of the corporation is liable
for each debt of the corporation that is created or incurred in this state after the
date on which the report, tax, or penalty is due and before the corporate privileges
are revived. The liability includes liability for any tax or penalty imposed by this
chapter on the corporation that becomes due and payable after the date of the
forfeiture.



Tex. Tax Code Ann. § 171.255(a) (1982). (4) Travelcorp revived its corporate privileges on August
13, 1986. (5) 

 During its existence, Travelcorp was subject to the Unemployment Compensation
Act which requires an employer to pay contributions to the Texas Employment Commission's
Unemployment Compensation Fund. Tex. Rev. Civ. Stat. Ann. § 5221b-5(a) (1987). Travelcorp
failed to pay contributions due on wages paid in the first and second quarters of 1986 and the State
instituted suit to recover the delinquent contributions. 

 The original defendants in the suit were Travelcorp (formerly Hoyt Tours,
Incorporated, doing business as Barker Travel Services, Inc.), and Phyllis Wilburn, J. N. Fiore
and Stephen E. Lewis, each of whom was an officer or director of Travelcorp. The trial court
granted an interlocutory default judgment against Travelcorp and severed the cause of action
against defendants Fiore and Lewis. The State filed a motion for summary judgment against
Wilburn and in its motion requested that the trial court render final judgment against Travelcorp. 
 In its motion for summary judgment, the State relied upon § 171.255 of the Tax
Code to contend that Wilburn was personally liable for delinquent unemployment contributions
and penalties in the amount of $11,320.80. Wilburn filed a cross-motion for summary judgment. 
The trial court granted the State's motion for summary judgment, rendered final judgment against
Travelcorp, and denied Wilburn's cross-motion. Wilburn appeals from the trial court's
judgment. (6)

 In three points of error, Wilburn asserts the trial court erred in granting the State's
motion for summary judgment because: (1) section § 171.255 of the Tax Code does not impose
personal liability on an officer of a corporation for taxes; (2) the State failed to offer evidence that
the obligations to pay unemployment contributions were created or incurred after the date of
forfeiture; and (3) there was no summary judgment evidence as to the date the tax liability was
created or incurred to support judgment in the amount of $11,320.80. On original submission we
reversed the trial court's summary judgment against appellant. The State has filed an amended
motion for rehearing. In its prayer for alternate relief, the State requests that we accept its
voluntary remittitur and affirm the trial court's judgment. Tex. R. App. P. Ann. 85(e) (Supp.
1991). We will overrule the State's motion for rehearing, accept its remittitur, modify the
judgment against appellant to reflect the remittitur, and affirm the trial court's judgment as
modified.



II. STANDARD OF REVIEW


 The question on appeal is not whether the summary judgment proof raises a fact
issue, but whether the summary judgment proof establishes as a matter of law that there is no genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause
of action. Gibbs v. General Motors Corporation, 450 S.W.2d 827, 828 (Tex. 1970). The movant
for summary judgment has the burden of showing that there is no genuine issue of material fact
and that it is entitled to judgment as a matter of law. In deciding whether there is a disputed
material fact issue precluding summary judgment, evidence favorable to the non-movant will be
taken as true. This Court must indulge every reasonable inference in favor of the non-movant and
resolve any doubts in her favor. Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). 



III. DISCUSSION AND AUTHORITIES



 A. The Construction To Be Given a Statute


Is a Question of Law
 

 In her first point of error, appellant asserts that the trial court erred in granting the
State's motion for summary judgment on the basis of § 171.255 of the Tax Code which imposes
personal liability for debts of a corporation, because unemployment contributions are taxes,
Friedman v. American Surety Co. of New York, 151 S.W.2d 570, 576 (Tex. 1941), and Texas law
has long recognized that "taxes" are not "debts."

 Section 171.255 does not define the term "debt." Debt is defined elsewhere in the
Act, but by express provision, the definition does not apply in this cause. (7) The term is not otherwise defined in the statute. Neither the State nor appellant has directed this Court to a case
construing the term as used in the Act, and we have not found any such case. Neither has the
State directed us to any agency rule construing the term "debt" as used in § 171.255. (8) It is then
our duty to construe the meaning of "debt" to give effect to the legislature's intentions. The
construction to be given a statute is a question of law. Johnson v. City of Fort Worth, 774 S.W.2d
653, 656 (Tex. 1989).



B. The Meaning of the Term "Debt" Is To Be Determined By Construction


 The meaning of the term "debt", as used in a particular statute, is to be determined
by construction. Reconstruction Finance Corporation v. Gossett, 111 S.W.2d 1066, 1073 (Tex.
1938) (debt defined differently owing to the subject-matter of the statutes in which it has been
used); McNeill v. City of Waco, 33 S.W. 322, 323 (Tex. 1895) ("debt" is used in different statutes
and constitutions in senses varying from the very restricted to the very general). The term
"debt" has been assigned both narrow and broad meanings. For a narrow definition see Stevenson
v. Blake, 113 S.W.2d 525, 527 (Tex. 1934)(a debt is a pecuniary obligation imposed by contract);
McClintock & Robertson v. Cottle County, 127 S.W.2d 319, 322 (Tex. Civ. App. 1939, writ
dism. judgm. cor.), appeal after remand aff'd, Cottle County v. McClintock & Robertson, 150
S.W.2d 134 (Tex. Civ. App. 1941, writ dism. judgm. cor.) (a contingent liability becomes a debt
only upon the happening of the contingency) (citing 17 C.J. 1377 for the proposition that every
debt must be certain and payable); and 26 C.J.S. Debt § 1 (1956)(a debt is an obligation arising
out of contract, express or implied). A more expansive definition of "debt" can be found in
Barber v. City of East Dallas, 18 S.W. 438, 439 (Tex. 1892) (in its more general sense debt
means that which one person is bound to pay to or perform for another); and 26 C.J.S. Debt §
1 (1956) (term "debt" need not be confined to obligations for the payment of money arising out
of contract and may include a variety of kinds of obligations). Additionally, this court has treated
certain contingent liabilities as debts to be excluded from surplus for purposes of the Act. State
v. Shell Oil Co., 747 S.W.2d 54, 55-57 (Tex. App. 1988, no writ); State v. Sun Refining &
Marketing, Inc., 740 S.W.2d 552, 553-55 (Tex. App. 1987, writ denied); State v. Sun Oil Co.
(Delaware), 740 S.W.2d 556, 558 (Tex. App. 1987, no writ) (contingent liabilities based on
reasonable estimates, treated as corporate debt and excluded from surplus for franchise tax
purposes).

 Whether a tax is or may ever be a debt also depends upon the construction to be
given in the particular instance. A tax is not a debt in the ordinary sense of the word, because
taxes are not contractual obligations and do not bear interest unless expressly provided for by
statute. Jones v. Williams, 45 S.W.2d 130, 136-37 (Tex. 1931) (discussing the American state
court authorities followed by Supreme Court of Texas); 84 C.J.S. Taxation § 1 (1954). 
Nevertheless, a tax is considered a liability or obligation, and may be a debt under a particular
statute, or in the enlarged sense of the word debt, which embraces any kind of just demand. 
Highland Park Indep. School Dist. v. Republic Ins. Co., 162 S.W.2d 1056, 1063 (Tex. Civ. App.
1942), rev'd on other grounds, 171 S.W.2d 342 (1943); 84 C.J.S. Taxation § 1 (1954).

 Appellant urges us to adopt a restricted meaning for the term "debt." We begin
by applying the rules set forth in the Code Construction Act, Tex. Gov't Code Ann. § 311.001
et seq. (1988 & Supp. 1991) (9), and other rules applicable to statutory construction.



 C. Applicable Rules in Aid of Construction of Statutes


 The construction to be given a statute depends upon the legislative intent, which
is to be determined from the language used and the purpose in enacting the law. Ross Amigos Oil
Co. v. State, 138 S.W.2d 798, 800 (Tex. 1940). A court must look to the entire Act in
determining the legislature's intent with respect to a specific provision. Taylor v. Firemen's &
Policemen's Civil Services, 616 S.W.2d 187, 190 (Tex. 1981). The Code Construction Act
provides certain basic rules in aid of construction of statutes:



In construing a statute, whether or not the statute is considered ambiguous on its
face, a court may consider among other matters the


 (1) object sought to be attained;


 (2) circumstances under which the statute was enacted;


 (3) legislative history;


 (4) common law or former statutory provisions, including laws on the
same or similar subjects;


 (5) consequences of a particular construction;


 (6) administrative construction of the statute; and


 (7) title (caption), preamble, and emergency provision.



Tex. Gov't Code Ann. § 311.023 (1988). This Court also presumes the entire statute is intended
to be effective and that public interest is favored over any private interest. Tex. Gov't Code Ann.
§ 311.021(1),(5) (1988). 

 Generally, statutes imposing a corporate franchise tax are to be liberally construed
so as to effectuate the purpose of their enactment as revenue statutes. Isbel v. Gulf Union Oil Co.,
209 S.W.2d 762, 764 (Tex. 1948). See also Calvert v. Texas Pipe Line Company, 517 S.W.2d
777, 781 (Tex. 1974) (stricter construction given in favor of taxpayer if doubt about statute's
application remains after dominant rules of construction have been applied). However, statutes
making directors and officers liable for corporate debts must be strictly construed and cannot be
extended beyond the clear meaning of their language. Schwab v. Schlumberger, 198 S.W.2d 79,
81 (Tex. 1946) (interpreting Tex. Rev. Civ. Stat. Ann. art. 7091, a predecessor to § 171.255). 
Additionally, because § 171.255 is penal in nature, it must be strictly construed to protect those
individuals against whom liability is sought. Rogers v. Adler, 696 S.W.2d 674, 677 (Tex. App.
1985, writ ref'd n.r.e.). When construing a statute, the court must read words according to their
ordinary meaning unless a contrary intent is apparent from the context. Taylor, 616 S.W.2d at
189.

 We have reviewed the text of the current Act as well as the title, preamble and
emergency provisions of predecessor versions of the Act. We are also guided by those court
decisions enunciating the purposes of the Act and § 171.255 in determining the legislature's intent
and the construction to be given the statute.

 The original Act provided for a franchise tax to be paid by private, domestic and
foreign corporations for the privilege of doing business within the State of Texas. It provided
penalties for failure to make prompt payment of such taxes and imposed liability on officers and
directors for debts knowingly and consensually created or incurred after forfeiture of the
corporation's right to do business. The original Act also prohibited officers and stockholders of
the defaulting corporation from doing business in or under the corporate name. This provision
has not survived. See Franchise Tax Act, 1907 Tex. Gen. Laws, 1st C.S., ch. 23, §§ 1, 2, 3,
8 & 12 at 502-04, 505, 507 (since amended, codified, repealed and now recodified at Tex. Tax
Code Ann. §§ 171.001, 171.255, & 171.362, §§ 171.001 and 171.362 since amended). (10) 

 Section 8 of the original Act made corporate officers liable for corporate debts
knowingly and consensually created or incurred after forfeiture of corporate privileges and before
revival of the right to do business. Some version of this provision has been embodied in every
subsequent codification of the Franchise Tax Act, down to the current § 171.255. 



D. Purposes of the Act


 The franchise tax is a tax on the privilege of transacting business within Texas. 
Sunoco Terminals, Inc. v. Bullock, 756 S.W.2d 418, 420 (Tex. App. 1988, no writ). The clear
purpose of the law is to levy a franchise tax on each and every corporation that is chartered in the
state. The inescapable conclusion is that this statute was enacted solely for the purpose of raising
revenue. The penalties imposed for failure to pay the franchise tax are heavy, and were evidently
provided to hasten payment and to inflict punishment on delinquent corporations. Ross Amigos,
138 S.W.2d at 800. Although business transacted during the time of such forfeiture is not void,
certain rights or privileges are taken away: the corporation is denied the right to sue or defend
in state court and the directors and officers are deprived of the corporate shield against personal
liability for certain corporate debts. Id.; Tex. Tax Code Ann. §§ 171.252, 171.255 (1982).

 The supreme court has commented on the purpose of the predecessor to § 171.255,
"The statute was meant to prevent wrongful acts of culpable officers of a corporation, and was
for the protection of the public and particularly those dealing with the corporation." Schwab, 198
S.W.2d at 81. Travelcorp continued to employ people after forfeiting its corporate privileges; it
continued to incur liability for contributions to the Unemployment Compensation Fund. Tex.
Rev. Civ. Stat. Ann. § 5221b-5(a) (1987). We believe that the legislative purpose of the section
would not be furthered by a definition of the term debt that excluded the officers and directors'
liability for unpaid obligations to the Texas Employment Commission. We do not violate the clear
import of § 171.255's language to construe "debt" to include liability for unemployment
contributions. 

 Appellant argues that a strict construction requires us to hold that the term "debt"
does not include the unemployment contributions at issue here. Section 171.255 specifically states
that in the event of forfeiture, each director and officer's liability includes liability for franchise
taxes imposed by this chapter. Appellant argues that by this specific inclusion of franchise taxes
the legislature impliedly intended to exclude directors and officers' liability for all other taxes,
such as unemployment contributions. We disagree. Section 311.005(13) of the Code
Construction Act provides that "includes" is a term of enlargement and not a term of limitation
or exclusive enumeration. Use of the term "includes" does not create a presumption that unlisted
items are excluded. Tex. Gov't Code Ann. § 311.005(13) (Supp. 1992). If anything, this
inclusion of liability for franchise taxes supports our view that the legislative goals of raising
revenue through the prompt payment of franchise taxes and protecting the public and those dealing
with the corporation require the construction we have given the term "debt" when the forfeiture
of corporate privileges is imposed as a penalty for failure to pay franchise taxes. We hold that
as used in § 171.255, the term "debt" was intended to encompass the obligation to pay
contributions to the Unemployment Compensation Fund. Appellant's first point is overruled.



IV. REMAINING POINTS OF ERROR


A. Preservation of Error


 Appellant has combined her argument and authorities under her two remaining
points of error. In her second point of error appellant argues the trial court erred in granting the
State's motion for summary judgment because the State failed to offer proof that the obligations
to pay unemployment contributions were created or incurred after the date of forfeiture. (11) The
date of forfeiture, however, is not the critical date because personal liability for corporate debts
attaches for debts created or incurred after the date the franchise taxes were due but before
corporate privileges are revived. Upon forfeiture of Travelcorp's privileges, the directors and
officers became personally liable for debts created or incurred after March 15, 1986, the franchise
tax due date. We will treat appellant's point as an attack on the State's failure to offer evidence
that the obligation to pay unemployment taxes was created or incurred after the date the franchise
taxes were due. See O'Neil v. Mack Trucks, Inc., 542 S.W.2d 112, 114 (Tex. 1976) (rule of
liberal construction applies to points in appellant's brief; merits of error will be passed on in light
of the statement and arguments).

 In her third point of error appellant asserts the trial court erred in granting the
State's motion for summary judgment in the amount of $11,320.80 because there was no summary
judgment evidence as to the date the tax liability was created or incurred.

 The State argues that appellant did not preserve error on these points because she
did not raise these arguments in her response to appellee's motion for summary judgment or in
her cross-motion for summary judgment. Tex. R. Civ. P. Ann. 166a(c) (Supp. 1991). In her
cross-motion for summary judgment appellant plead, in pertinent part:



Section 171.255(a) Texas Tax Code, expressly imposes personal liability on
corporate officers for debt of the corporation incurred subsequent to forfeiture of
a corporate charter. Further § 171.255(a) provides that the liability includes
franchise taxes or penalties imposed on the corporation that become due and
payable after the date of foreclosure. The "debt" for which the State of Texas
seeks to hold Defendant Wilburn liable is for unemployment taxes imposed upon
Defendant Travelcorp under the Texas Unemployment Compensation Statute. As
is set forth in Defendant Wilburn's Response to Plaintiff's Motion for Summary
Judgment and Brief in Support Thereof, unemployment compensation taxes do not
fall within the purview of "debt" as recognized in Texas Law. Further, the taxes
for which Plaintiff seeks to hold Defendant Wilburn liable are not taxes or
penalties imposed under the Franchise Tax Statutes that became due and payable
after the date of Defendant Travelcorp International, Inc.'s forfeiture. Therefore,
Defendant Wilburn is not liable for the unemployment taxes imposed upon
Defendant Travelcorp under the Texas Unemployment Compensation Statute.



We have already held that the unemployment contributions are a "debt" within the meaning of
§ 171.255. The only remaining argument appellant raised in the trial court was that she is not
liable for the taxes because they are not taxes or penalties imposed by the Franchise Tax Act that
become due and payable after the date of forfeiture. In her response and cross-motion appellant
failed to raise the arguments that the obligation to pay unemployment contributions was not
"created or incurred after the date of forfeiture," or that "there was no summary judgment
evidence as to the date the tax liability was created or incurred." 

 Nevertheless, Wilburn needs no answer or response to the motion to contend on
appeal that the grounds expressly presented to the trial court by the State's motion are insufficient
as a matter of law to support the summary judgment. City of Houston v. Clear Creek Basin
Authority, 589 S.W.2d 671, 678 (Tex. 1979). No answer or response being necessary to raise
a legal sufficiency challenge, it follows that the failure to raise such a challenge in her response
or cross-motion does not prelude her raising it on appeal. And this is precisely what her second
point of error does. (12) 

 Even if appellant were precluded from raising these points, it would still be this
Court's duty to determine if the State is entitled to summary judgment as a matter of law. The
State must establish its entitlement to summary judgment on the issues expressly presented to the
trial court by conclusively proving all essential elements of its cause of action as a matter of law. 
Clear Creek, 589 S.W.2d at 678. The date the debt was created or incurred is an essential
element of the State's cause. It was the State's burden conclusively to show that the
unemployment-contributions debt was either created or incurred after the date the franchise taxes
became due, March 15, 1986.



B. Holding


 The word "create" means to bring into existence something which did not exist. 
The word "incur" is defined as brought on, occasioned, or caused. Schwab, 198 S.W.2d at 81. 
Article 5221b-5(a) of the Texas Unemployment Compensation Act recites, in pertinent part:



Contributions shall accrue and become payable by each employer for each calendar
year, or portion thereof, in which he is subject to this Act, with respect to wages
for employment paid during such calendar year or portion thereof.[ (13)] Such
contributions shall become due and be paid to the Commission for the fund in
accordance with such rules or regulations as the Commission may prescribe.



Tex. Rev. Civ. Stat. Ann. art. 5221b-5(a) (1987) (emphasis added). The amount of contributions
an employer is obligated to pay is based on the wages for employment paid during the calendar
year or portion thereof. 

 Appellant argues that the taxes are created or incurred and become due on each day
a person is employed and that she is liable, if at all, only for contributions that became due upon
the completion of each day's work after March 16, 1986. Under appellant's interpretation, the
liability for contributions would be computed on a daily basis in order to determine which taxes
were created or incurred after the date the franchise taxes were due. This approach ignores the
clear language of article 5221b-5(a), which bases liability for contributions on wages actually
paid, and would create an administrative nightmare unless Travelcorp paid employee wages on
a daily basis. We decline to adopt appellant's interpretation of when the debt is created or
incurred. 

 In its amended motion for rehearing, the State argues that while the debt is created
when wages are paid, it is incurred when contributions are due. (14) The State essentially is arguing
that the debt is created by one event, but incurred by another. We are aware of the distinction. 
However, for the reasons stated below, we believe the same event both "creates" and "incurs" the
debt. 

 According to the State's argument, appellant is liable for contributions based on
wages paid during the first two quarters of 1986, including those contributions based on wages
that were paid before March 16, 1986, because the unemployment-contributions due date occurred
after that date. To establish the contributions due date, the State directed this Court to
Employment Commission Rule 301.9, which provides, in pertinent part:



Contributions shall accrue quarterly and shall become due on the first day of the
month immediately following such calendar quarter. They shall be paid to the
commission on or before the last day of such month.



Tex. Employment Comm'n, 7 Tex. Reg. 2630 (1982) (40 T.A.C. § 301.9, since amended),
adopting 7 Tex. Reg. 2107 (proposed rule). The State asserts that this rule establishes that the
due dates for the taxes are April 1 and July 1, respectively, for the first and second quarters of
1986, both of which occur after the franchise tax due date. 

 The agency rule was not before the trial court as part of the State's summary
judgment proof. However, Tex. Rev. Civ. Stat. Ann. art. 6252-13b, § 4 provides that the rules
of agencies published in the Texas Administrative Code are to be judicially noticed and constitute
prima facie evidence of the text of the documents. (15) Pursuant to Tex. R. Civ. Evid. Ann. 204
(Pamph. 1991), we take judicial notice of the rule and the due dates it establishes. 

 Nevertheless, we decline to hold that the debt is incurred when contributions are
due because to do so would hold officers and directors personally liable for a corporate debt that
is based, at least in part, on wages paid before the date the franchise taxes were due. For
example, while the first quarter contributions are due April 1, they are based on wages paid
between January 1 and March 30. If the debt were incurred when "due," Wilburn would be held
personally liable for contributions that are based, in part, on wages paid before March 15, 1986. 
We believe the State's construction would extend officer and director liability beyond that
contemplated by the legislature when it enacted § 171.255.

 We hold that when a party relies on § 171.255 to hold an officer or director of a
corporation personally liable for unemployment-tax contributions, the debt (the obligation to pay
contributions to the Unemployment Compensation Fund) is created or incurred when wages are
actually paid. The payment of wages is the event that both creates (brings into existence) and
incurs (brings on or occasions) the employment-tax liability. Absent payment of employment
wages, there is no employment-tax liability. 

 Article 5221b-5(a) provides, in pertinent part, that "contributions accrue and
become payable by each employer for each calendar year, or portion thereof, . . . with respect
to wages for employment paid during such calendar quarter or portion thereof. Tex. Rev. Civ.
Stat. Ann. art. 5221b-5(a) (1987). The State's exhibit "A," which is a sworn statement and is
attached to its motion for summary judgment, reflects "total taxable wages" for the first and
second quarters. (16) Since the total taxable wages for each quarter are presumed to include the
wages for employment paid during that quarter, we may conclude from the State's exhibit "A"
that these wages were paid on payroll dates occurring during the quarter (i.e. wages are paid on
payroll dates, therefore wages paid during each quarter are paid on payroll dates that occur during
the quarter). Accordingly, appellant is liable only for contributions based on wages paid on
payroll dates occurring after March 15, 1986 and before August 13, 1986, when the corporate
privileges were revived. (17)



C. First Quarter Contributions and Penalties


 The first calendar quarter commences January 1 and ends March 30. The State's
claim for first quarter contributions and penalties is based on wages paid during the first quarter.
The State's exhibit "A" reflects contributions and penalties due for the first calendar quarter
($7556.69). Exhibit "A" does not segregate that portion of first quarter contributions and
penalties due that is based on wages paid after March 15, 1986, the franchise tax due date. 
Appellant is liable for only that portion of first quarter contributions and penalties that is based
on wages paid after March 15, 1986. Therefore, the State has not met its burden to show that it
is entitled as a matter of law to that portion of the judgment against appellant that is based on its
claim for first quarter contributions and penalties, because it can not be determined from the
summary judgment proof what portion of the first quarter contributions and penalties due is based
on wages paid after March 15, 1986.



D. Second Quarter Contributions and Penalties


 The second quarter of the calendar year commences on April 1 and ends June 30. 
Therefore, all wages paid during the second quarter were paid after March 15, 1986, the date the
franchise taxes were due, and before August 13, 1986, the date the corporate privileges were
revived. The State's exhibit "A" reflects the amount of contributions and penalties due for the
second calendar quarter. The State has shown that its claim for the second quarter contributions
and penalties is based on wages paid after March 15, 1986. The State has established that the
second calendar quarter portion of the debt was created or incurred after the date the franchise
taxes were due. Furthermore, Article 5221b-12(e) provides that exhibit "A," which is a sworn
statement, is prima facie evidence "that the contributions, penalties or interest shown to be due
by said statement, . . . are, within the knowledge of the Affiant, past due and unpaid," unless a
sworn answer to the contrary is filed. 1957 Tex. Gen. Laws, ch. 460, § 14, at 1357 (Tex. Rev.
Civ. Stat. Ann. art. 5221b-12(e), since amended). Appellant did not file a sworn answer. The
State has met its burden to show that it is entitled as a matter of law to that portion of the
judgment against appellant that is based on second quarter contributions and penalties due in the
amount of $3,764.11.



E. Conclusion


 The trial court granted the State's motion for summary judgment and ordered that
the State recover from Wilburn the amount of $11,320.80, representing the contributions and
penalties for the first and second quarters of 1986. The judgment shows that the amount of
contributions and penalties due for the first quarter is $7,556.69. We have determined, however,
that the State did not show it was entitled, as a matter of law, to that portion of the judgment. 
Accordingly, in our judgment issued on November 13, 1991, we reversed and remanded the
portion of the summary judgment that awarded the State contributions and penalties totalling
$11,320.80. The State then filed a voluntary remittitur in the amount of $7,556.69. Tex. R.
App. P. Ann. 85(e) (Pamph. 1991). Because this Court is of the opinion that the remittitur cures
the reversible error, we accept the remittitur and modify the trial-court judgment accordingly. 
Rule 85(e). 

 The judgment of the trial court in favor of the State of Texas and against Phyllis
Wilburn is reduced by the amount of $7,556.69 to award the State recovery in the amount of
$3,764.11 against Phyllis Wilburn. As so modified, the judgment is affirmed.



 

 Bea Ann Smith, Justice

[Before Justices Powers, Jones and B. A. Smith]

Modified and, as Modified, Affirmed

Filed: February 5, 1992 

[Publish]

1. [1] Franchise Tax Act, 1981 Tex. Gen. Laws, ch. 389, § 171.001-401 at 1691 (Tex. Tax Code
Ann. § 171.001 et seq., since amended).
2. [2] "A franchise tax is imposed on each corporation that does business in this state or that is
chartered or authorized to do business in this state."
3. [3] 1984 Tex. Gen. Laws, 2nd C.S., ch.10, art. 3, § 5, at 74 (Tex. Tax Code Ann. § 171.251,
since amended).
4. [4] A director or officer of the corporation is not liable for a debt of the corporation if the
director or officer shows that the debt was created or incurred:


(1) over the director's objection; or


(2) without the director's knowledge and that the exercise of reasonable
diligence to become acquainted with the affairs of the corporation would
not have revealed the intention to create the debt.


Tex. Tax Code Ann. § 171.255(c) (1982). Appellant does not raise the defenses to liability found
in § 171.255(c).
5. [5] Section 171.258 of the Act provides that the comptroller shall revive the corporate privileges
of a corporation if the corporation, before the forfeiture of its charter or certificate of authority,
pays any tax, penalty, or interest due under this chapter. Tex. Tax Code Ann. § 171.258 (1982).
6. Travelcorp did not appeal from the trial court's final judgment.
7. [7] Section 171.109(a)(3) defines the term "debt" as follows:


(a) In this chapter:


 (3) "Debt" means any legally enforceable obligation measured in a
certain amount of money which must be performed or paid within
an ascertainable period of time or on demand.


Tex. Tax Code Ann. § 171.109(a)(3) (Supp. 1992). Section 171.109(a)(3) was enacted by the
70th legislature as part of Senate Bill No. 1170. 1987 Tex. Gen. Laws, ch. 324, § 1, at 1734. 
Section 4 of this act provides:


(a) The change in law made by this Act applies to the computation and
reporting of franchise taxes for each calendar reporting period beginning
on or after May 1, 1988, and for which tax payments are due on or after
March 15, 1988. . . .


(b) The law in effect immediately before the effective date of this Act applies
to any reporting period not covered by the change in law made by this Act,
and the law is continued in effect for that purpose only, except that the
comptroller by rule may provide for earlier application of the change in law
made by this Act to any reporting period in progress on the effective date
of this Act.


1987 Tex. Gen. Laws, ch. 324, § 4, at 1736. Travelcorp's corporate privileges were forfeited
for failure to pay franchise taxes due in 1986. The effective date of this Act was August 31,
1987. Therefore, the definition of debt found in § 171.109(a)(3) may not be applied in this cause. 
We must construe the statute as it existed before this amendment.
8. [8] We do give weight to, although we are not bound by, agency rules construing statutes. See
Southwest Airlines Co. v. Bullock, 784 S.W.2d 563, 568 (Tex. App. 1990, no writ); Direlco, Inc.
v. Bullock, 711 S.W.2d 360, 363 (Tex. 1986, writ ref'd n.r.e.).
9. [9] The Franchise Tax Act was enacted by the 67th legislature as part of House Bill No. 1708,
which was an act adopting Title Two of the Tax Code. See 1981 Tex. Gen. Laws, ch. 389, § 1,
at 1490. In construing a code enacted by the 60th legislature in 1967, or any subsequent
legislature, the Code Construction Act applies. Tex. Gov't Code Ann. § 311.002 (1988).
10. [10] The 72nd legislature has also added a punishment provision for wilful and fraudulent
attempts to evade or defeat imposition or payment of franchise taxes. Tex. Tax Code Ann.
§ 171.363 (Supp. 1992)(effective January 2, 1992).
11. [11] Appellant rephrases her second point of error later in her brief: "The Trial Court erred in
granting the STATE'S Motion for Summary Judgment because the STATE failed to offer evidence
that the obligations to pay Unemployment Taxes accrued after the date of forfeiture." The date
of accrual is only relevant if it is synonymous with the date the tax debt was created or incurred. 
The State made no such argument in its motion for summary judgment and there is nothing in the
record to indicate this forms a basis for the judgment. We address the second point as indicated,
infra.
12. [12] Appellant's third point may also be construed as a legal sufficiency challenge. In its brief,
and at oral argument, the State asserted that appellant's third point of error was an attack on the
amount of the judgment and that she was precluded from raising this point because she had failed
to file a sworn denial as required by Tex. Rev. Civ. Stat. Ann. art. 5221b-12(e). Under Article
5221b-12(e), unless appellant files a sworn denial, the State's Exhibit "A," which evidences the
unemployment contributions debt, is taken as prima facie evidence that the debt is past due and
unpaid and all just and lawful offsets, payments, and credits have been allowed. The provision
further provides that, in the absence of a sworn denial, appellant cannot deny the claim for
contributions, penalties, or interest or any portion thereof. 1957 Tex. Gen. Laws, ch. 460, § 14,
at 1357, (Tex. Rev. Civ. Stat. Ann. art. 5221b-12(e), since amended). While appellant may be
precluded from attacking the amount of the judgment, she is not precluded from asserting that
there is no evidence as to the date the tax liability was created or incurred, because this is a
challenge to the legal sufficiency of the summary judgment proof. 
13. [13] The calendar year is the period from January 1 to December 31 inclusive. Black's Law
Dictionary 204 (6th ed. 1990).
14. [14] As support for this argument, the State cites Cowan Boat Transfer v. Texas Employment
Com'n, 789 S.W.2d 405 (Tex. App. 1990, dism. agr.). In Cowan, the employment commission
had determined that contract truck drivers were in the employ of the appellant. Consequently,
Cowan became an employer subject to the Unemployment Compensation Act for purposes of
unemployment-tax contributions. Nevertheless, Cowan did not pay estimated unemployment-tax
contributions. At issue was whether Cowan was obligated to pay the estimated tax contributions
in the absence of a formal assessment by the commission. Cowan, 789 S.W.2d at 407. This
court concluded that the statutory tax contributions were alleged to be due, for purposes of tax
liability arising under the Act, when the Commission made its notification and ruling. 
Consequently, a formal assessment was not a prerequisite to Cowan's obligation to pay the tax
liability. Id. Cowan does not stand for the proposition that the tax liability is created or incurred
when due. Nor does Cowan hold that the tax determination occurs when employment taxes are
reported; the determination that Cowan was liable for contributions occurred when the
Commission determined it was an employer of the truck drivers. 
15. [15] Section 4 provides:


The codified rules of the agencies published in the Texas Administrative Code, as
approved by the secretary of state and as amended by documents subsequently filed
with the office of the secretary of state, are to be judicially noticed and constitute
prima facie evidence of the text of the documents and of the fact that they are in
effect on and after the date of notation.


Tex. Rev. Civ. Stat, Ann. art. 6252-13b, § 4 (Supp. 1992)
16. [16] The State has requested that we take judicial notice of Texas Employment Rule 301.7(b). 
Rule 301.7(b) provides, in pertinent part:


Each taxed employer shall submit to the commission, within the month during
which contributions for any period become due, and not later than the date on
which contributions are required to be paid to the commission, an employer's
quarterly report . . . showing the total amount of wages (as defined in subsection
19(n) of the Act) paid during such quarter for employment,. . . and showing other
information called for on the employer's quarterly report form printed by the
commission. The employer's quarterly report shall be made on commission forms
and shall contain all facts and information necessary to a determination of the
amount of contributions due.


Tex. Employment Comm., 7 Tex. Reg. 2630 (1989) (40 Tex. Admin. Code § 301.7(b), since
amended), adopting 7 Tex. Reg. 2107 (proposed rule). The reporting scheme mandated by rule
301.7(b) provides for a lump sum accounting of wages paid for employment during each quarter. 
The State represents that contributions due are also reported on a lump sum basis. Pursuant to
Tex. R. Civ. Evid. Ann. 204 (Pamph. 1991), we take judicial notice of the rule.
17. [17] Our holding is consistent with the requirement that we strictly construe § 171.255 to protect
the individual against whom liability is sought. Rogers, 696 S.W.2d at 677. It does not ignore
the administrative scheme created by the Commission, nor does it require the State to conduct an
audit or maintain an action at law in order to ascertain what portion of the contributions, in a
quarter where franchise taxes are due, is based on employment wages paid after the franchise tax
due date. We believe that, under Rule 301.7(b), the Commission has the power to require an
employer to segregate that portion of wages paid for employment between January 1 and the
franchise tax due date from that portion of employment wages paid after the franchise tax due date
and until the end of the first quarter.


Furthermore, our holding is consistent with the purpose of §171.255. Schwab, 198 S.W.2d at
81 (statute meant to prevent wrongful acts of culpable officers of a corporation and protect the
public and those dealing with corporation). If the State had met its burden to show the amount
of first quarter contributions and penalties that are based on wages paid after March 15, 1986,
Wilburn would be personally liable for those amounts.