**HARKEN OIL & GAS, INC., Appellant,**

v.

**John SHARP, Comptroller of Public Accounts of the State of Texas; and Dan Morales, Attorney General of the State of Texas, Appellees.**

**No. 3–93–430–CV.**

Court of Appeals of Texas, Austin.

March 16, 1994.

———

Troy L. Voelker, McNery & Voelker, Round Rock, for appellant.

Dan Morales, Atty. Gen., Gregory E. Perry, Asst. Atty. Gen., Austin, for appellees.

Before POWERS, KIDD and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

Harken Oil & Gas, Inc. ("Harken") sued John Sharp, Comptroller of Public Accounts, and Dan Morales, Attorney General of the State of Texas ("Comptroller") for a refund of franchise taxes paid under protest for the years 1987 and 1988. *See* Tex.Tax Code Ann. § 112.151 (West 1992). On cross-motions for summary judgment, the trial court granted summary judgment in the Comptroller's favor. We will affirm the judgment of the trial court.

## BACKGROUND

In 1986, Harken formed a subsidiary, E–Z Serve Holding Company, Inc. ("Holding Company") for the sole purpose of acquiring the outstanding stock of E–Z Serve, Inc. The Holding Company acquired E–Z Serve on December 31, 1986. In 1987 and 1988, E–

Z Serve paid franchise tax on surplus that included its pre-acquisition retained earnings. In calculating its franchise taxes for the same two years, Harken included in its surplus the pre-acquisition earnings of E–Z Serve, its second-tier subsidiary.[1] Harken sought a refund of the franchise taxes attributable to the pre-acquisition earnings of E–Z Serve, a sum exceeding $60,000 exclusive of interest, arguing that state policy effective at the relevant time would have permitted Harken to exclude earnings of a subsidiary, and requesting the same exclusion for the pre-acquisition earnings of the subsidiary of a subsidiary. The Comptroller denied Harken's request, limiting the exclusion to earnings of first-tier subsidiaries. The trial court granted the Comptroller's motion for summary judgment, and Harken brought this appeal.

## DISCUSSION

■ In *State v. Sun Refining & Marketing, Inc.*, 740 S.W.2d 552 (Tex.App.—Austin 1987, writ denied), we held that the pre-acquisition earnings of a subsidiary should not be included as surplus of a parent corporation in the assessment of franchise taxes. The sole issue presented on appeal is whether our holding in *Sun* should be extended to exclude from a parent corporation's surplus the pre-acquisition earnings of a second-tier subsidiary. In *Sun* we relied on *Bullock v. Enserch Corp.*, 583 S.W.2d 950 (Tex.Civ. App.—Waco 1979, writ ref'd n.r.e.), a case requiring franchise taxes to be based on the taxpayer's cost method of accounting to avoid the double taxation of retained earnings likely under a consolidated or equity method of accounting. *Enserch*, 583 S.W.2d at 952. We will reexamine the underpinnings of *Sun* in light of subsequent legislative pronouncements.

*Enserch* involved the question of which accounting method more fairly represented the cost of a parent corporation's investment in a subsidiary, the cost method of accounting or the equity method of accounting. Although Enserch had been using the cost method of accounting, in 1973 the Federal Energy Regulatory Commission (FERC) imposed a requirement that utilities report their undistributed subsidiary earnings. For the sole purpose of complying with FERC's requirement, Enserch added a subaccount to consolidate the earnings of all of its subsidiaries; it then eliminated this subaccount with an adjusting entry before reporting its financial condition to stockholders. The Comptroller sought to impose franchise taxes based on Enserch's consolidated report prepared for FERC, despite the fact that in 1977 the Comptroller had amended its rules to require that corporations use the cost method of accounting to reflect their actual cost of investing in the stock of subsidiaries. For the tax year in question, the Comptroller refused to apply its own rule retroactively. The *Enserch* court noted that the equity method of accounting is substantially a consolidated accounting because it incorporates into one report all subsidiary corporations owned by the parent corporation. The court concluded that imposing taxes on this method of accounting was at odds with the franchise tax principle that each and every corporation shall pay taxes based upon its own value. *Enserch*, 583 S.W.2d at 951. The Comptroller admitted that it changed its own rules in 1977 because the consolidated method of reporting unfairly taxed the parent on the same earnings already taxed against the subsidiary. In *Enserch*, the court described the Comptroller's decision to assess taxes against Enserch using an admittedly unfair method of accounting as arbitrary and fundamentally wrong. *Id.* at 952.

In *Sun* we applied *Enserch* to a situation involving pre-acquisition retained earnings, noting that we failed to see any distinction in the treatment of pre-acquisition and post-acquisition earnings. *Sun*, 740 S.W.2d at 556. Upon reflection, we now believe that we may have been too hasty in reaching that conclusion. *Enserch* merely recognized the cost system of accounting as the fairest method for assessing franchise taxes against separate entities, which the Comptroller had already recognized by amending its own

---

1. There is nothing in the record on appeal regarding the franchise taxes paid by the Holding Company.

rules. Such a ruling does not necessarily require excluding the *pre-acquisition earnings* of a subsidiary from a parent's surplus, a situation which presents economic and accounting considerations different from those addressed in *Enserch.* Indeed, the legislature has amended the Tax Code to overrule our holding in *Sun:*

> The retained earnings of a subsidiary corporation or other investee before acquisition by the parent or investor corporation may not be excluded from the cost of the subsidiary corporation or investee to the parent or investor corporation and must be included by the parent or investor corporation in calculating its surplus.

Tex. Tax Code Ann. § 171.109(h) (West 1992). The present controversy arose before the effective date of the amendment overruling our holding in *Sun.* In deciding whether to extend *Sun* beyond its precise facts, however, we take note of the legislature's assessment of *Sun*'s effect, and its decision to amend the Tax Code in response.

Harken notes that nothing in the *Sun* decision expressly limits its exclusion to first-tier subsidiaries. Its silence, however, does not mandate the extension Harken seeks. The Comptroller warns that extending the *Sun* holding to second-tier and lower-ranked subsidiaries creates the possibility of pyramiding exclusions that could significantly reduce the tax base of the state.[2] Harken responds that the present transaction involves no pyramiding of exclusions because the Holding Company had no pre-acquisition worth, having been set up for the sole purpose of acquiring E–Z Serve. By choosing to accomplish this acquisition in an indirect manner, presumably for reasons unrelated to the franchise tax, Harken lost the exclusion it was entitled to under our decision in *Sun.* We have concluded that *Enserch* did not compel the decision we announced in *Sun;* the legislature has overruled *Sun* by amending the Tax

Code to require a parent corporation to include in surplus its subsidiary's pre-acquisition earnings. We are disinclined to extend the *Sun* decision to compensate Harken for its lost exclusion in this case. While we do not overrule *Sun,* we do strictly limit it to its facts. The trial court did not err in denying Harken's motion and in granting the Comptroller's motion for summary judgment. We overrule the first point of error.

■ In its third point of error, Harken complains that the Comptroller's decision to deny any exclusion for the pre-acquisition earnings of E–Z Serve is arbitrary, discriminatory, and fundamentally wrong. Unlike its policy in *Enserch* of using an admittedly unfair method of accounting, the Comptroller's policy here comports with the subsequent legislative decision of how to fairly treat pre-acquisition retained earnings of all subsidiaries. The Comptroller's policy also is a rational attempt to prevent the pyramiding of exclusions. We conclude that limiting the *Sun* exclusion to first-tier subsidiaries is not irrational, arbitrary or fundamentally wrong.

■ Nor can Harken prevail on its second point of error, complaining that the policy of including the pre-acquisition earnings of a second-tier subsidiary in its surplus unconstitutionally subjects Harken to double or triple taxation. We are not convinced that any double reporting actually occurs when the accounting is properly understood. E–Z Serve is being taxed on its surplus; Harken is being taxed on its investment in E–Z Serve, money that would have been included in Harken's surplus had it not been used to acquire E–Z Serve. *See Calvert v. Capital Southwest Corp.,* 441 S.W.2d 247, 263 (Tex. 1969), *appeal dism'd for lack of substantial federal question,* 397 U.S. 321, 90 S.Ct. 1120, 25 L.Ed.2d 336 (1970) (noting that taxation

---

**2.** For example, if A is worth $8, B is worth $4, C is worth $2, and D is worth $1, a total of $15 will be subject to the franchise tax. If C buys D, D is still worth $1 and C is still worth $2 because it retains $1 after the acquisition and has just replaced $1 in cash with $1 in D's stock. Although the total worth of the companies has not changed as a result of the transactions, C, as a result of *Sun,* has only $1 subject to tax, and the total

taxable worth in the state is now $14. According to the construction Harken would have us adopt, when B buys C, C would also only have $1 of taxable value, because it gets a $2 exclusion for C and a $1 exclusion for B. Now, $11 of the $15 of worth in the state is taxable. When A buys B, A, according to the same progression, also pays tax on only $1 of its worth. Now, $4 of the $15 is taxable.

on investment in a new corporation and taxation on assets belonging to that new corporation is not deemed double taxation). If eliminating this exclusion does require double reporting under some circumstances, a system of taxation that is otherwise rationally related to a legitimate governmental goal and operates equally within each class of taxpayers is not inherently unconstitutional because it occasions some double-taxation. *See Tandy Corp. v. Sharp*, 872 S.W.2d 814, 818 (Tex. App.—Austin 1994, no writ h.). We overrule Harken's second and third points of error.

## CONCLUSION

The Comptroller's policy of limiting *Sun*'s exclusion to first-tier subsidiaries is not irrational, arbitrary or fundamentally wrong, nor is it unconstitutional. The trial court did not err in denying Harken's motion and granting the Comptroller's motion for summary judgment. Consequently, we affirm the trial court's judgment.

POWERS, J., not participating.