John SHARP, Comptroller of Public Accounts for the State of Texas; Dan Morales, Attorney General for the State of Texas; and Martha Whitehead, Treasurer of the State of Texas, Appellants,

v.

CATERPILLAR, INC., Appellee.

No. 03–95–00272–CV.

Court of Appeals of Texas, Austin.

Sept. 18, 1996.

Rehearing Overruled Nov. 20, 1996.

---

Dan Morales, Attorney General, Christine Monzingo, James T. Parsons, Assistant Attorneys General, Taxation Division, Austin, for Appellants.

R. James George, Jr., George, Donaldson & Ford, L.L.P., Austin, for Appellee.

Before CARROLL, C.J., and JONES and B.A. SMITH, JJ.

JONES, Justice.

Appellee Caterpillar, Inc. ("Caterpillar") sued appellants (collectively, "the Comptroller")[1] in district court for a refund of franchise taxes paid under protest. The district court granted summary judgment in favor of Caterpillar, and the Comptroller now appeals. We will reverse the district court's judgment and remand the cause.

### THE CONTROVERSY

The issue at the heart of this appeal is whether Caterpillar must be allowed to deduct from its franchise tax base an estimate of future liability for certain post-retirement employee benefits. Caterpillar provides extensive benefits to its retired employees, including health and life insurance coverage, which are the benefits at issue in this appeal. Caterpillar pays health and life insurance claims out of general revenue as they are incurred; the benefits are not "funded" by a trust or other similarly dedicated asset.

---

**1.** Appellants are John Sharp, Comptroller of Public Accounts for the State of Texas; Dan Morales, Attorney General for the State of Texas; and Martha Whitehead, Treasurer of the State of Texas.

Though Caterpillar's future liability for these benefits may be statistically predictable with reasonable accuracy, the exact amount of payments for future years cannot be precisely determined in advance.

For the 1988–1994 franchise-tax reporting years, the Comptroller did not allow Caterpillar to deduct from its franchise tax base future liability for the benefits at issue. Caterpillar paid its franchise tax under protest and, after exhausting its administrative remedies, filed suit in district court seeking a refund of over $2,400,000. Caterpillar argued that the relevant provisions of the Tax Code should be interpreted to allow a deduction for its future benefits liability. Alternatively, Caterpillar claimed that these provisions are preempted by the federal Employee Retirement Income Security Act ("ERISA")[2] and violate the Texas constitutional guarantee of equal and uniform taxation. Both parties moved for summary judgment. The district court granted Caterpillar's motion for summary judgment and overruled the Comptroller's motion. The Comptroller now appeals.

**FRANCHISE TAX BACKGROUND**

The franchise tax is imposed on corporations for the privilege of doing business in Texas. *See* Tex.Tax Code Ann. § 171.001(a)(1) (West 1992). A corporation's franchise tax base is determined, in part, by applying a specified tax rate to the corporation's net taxable capital. *Id.* § 171.002(b)(1). A corporation's net taxable capital is equal to its stated capital plus its surplus, minus any deductions allowed by the Tax Code. *Id.* § 171.101(a). At issue in this appeal is the surplus component of net taxable capital.

Before 1987, the Tax Code did not define surplus. In 1987, the legislature added section 171.109 to the Tax Code to provide a general definition of surplus. Act of June 1, 1987, 70th Leg., R.S., ch. 324, § 1, 1987 Tex.Gen.Laws 1734, 1734–35 (Tex.Tax Code Ann. § 171.109(a), since amended).[3] Both parties agree that the legislature added the definition of surplus to overturn this Court's holdings in *State v. Sun Refining & Marketing, Inc.*, 740 S.W.2d 552 (Tex.App.—Austin 1987, writ denied), and *State v. Sun Oil Co. (Delaware)*, 740 S.W.2d 556 (Tex.App.—Austin 1987, no writ) ("the *Sun* cases").[4] In the *Sun* cases, we held that taxpayers could exclude from surplus reasonable estimates of contingent liabilities, such as self-insurance accounts, bad debt accounts, deferred employee benefits accounts, and various other liabilities connected with the oil and gas industry. The 1987 Act defined surplus as net assets minus stated capital; net assets were, in turn, defined as total assets minus total debts. *Id.* § 171.109(a)(1)–(2). To effectively overturn the *Sun* cases, the legislature also provided that surplus specifically includes "unrealized, estimated, or contingent losses or obligations...." *Id.* § 171.109(a)(1).

In 1991, the legislature added subsection 171.109(j), which provides that a corporation may not exclude from surplus liabilities for employee benefits "that are not payable in the current accounting year, including retirement, medical, insurance, post-retirement, and other similar benefits...." *Id.* § 171.109(j)(1).[5] The legislature specifically noted that it intended subsection (j)(1) to be considered as a clarification of the existing law, not as a substantive change. Act of

---

**2.** 29 U.S.C. §§ 1001–1461 (1994).

**3.** The legislature amended section 171.109(a) in 1991, and that amendment applies to Caterpillar's 1992–1994 franchise tax reporting years. Act of August 13, 1991, 72d Leg., 1st C.S., ch. 5, § 8.08, 1991 Tex.Gen.Laws 158, 159. Because the amendment did not substantively change the statute, we cite the current code for convenience.

**4.** *See* Tex.S.B. 1170, Second and Third Reading on the Floor of the Senate, 70th Leg., R.S. (May 18, 1987) (amendment by Senator Jones); Tex. S.B. 1170, Hearing Before the House Committee

on Ways and Means, 70th Leg., R.S. (remarks of Committee Chair and Mr. Bill Allaway).

**5.** Subsection (j) was amended in 1993, and the amendment applies to Caterpillar's 1994 reporting year. Act of May 27, 1993, 73d Leg., R.S., ch. 546, § 6, 1993 Tex.Gen.Laws 2043, 2044 (Tex.Tax Code Ann. § 171.109(j) (West Supp. 1996)). Because the amendment made no substantive change for purposes of this appeal, we will cite to the former version of subsection (j) as it appears in the 1992 main volume of the Tax Code.

August 13, 1991, 72d Leg., 1st C.S., ch. 5, § 8.081, 1991 Tex.Gen.Laws 134, 159. Apparently, then, the legislature added subsection (j) to clarify how the general definition of surplus in subsection (a)(1) of the 1987 Act should be applied in the context of estimated employee benefits.

## DISCUSSION

In district court, both parties moved for summary judgment. The district court granted Caterpillar's motion, which contained the three independent grounds previously set forth. The district court also denied the Comptroller's motion for summary judgment, which was based on the asserted ground that Caterpillar's liability is estimated and therefore must be included as a part of surplus as a matter of law. Points of error one, three, four, and five complain of the trial court's granting summary judgment for Caterpillar. Points of error two through five complain of the trial court's failure to grant summary judgment for the Comptroller.

■ Because the district court granted summary judgment in a general order, we must affirm the judgment if it is supported by any of the three legal grounds presented in Caterpillar's motion. *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993); *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 79 (Tex.1989). We review *de novo* the district court's determination that Caterpillar was entitled to judgment as a matter of law. *Capitan Enters., Inc. v. Jackson*, 903 S.W.2d 772, 775 (Tex.App.—El Paso 1994, writ denied).

### (i) Statutory Interpretation

■ The Comptroller argues that the district court erred because the Tax Code does not permit Caterpillar to deduct from surplus its future liability for the employee benefits at issue. Caterpillar's argument implicates two provisions of the Tax Code: (1) section 171.109(a)(3), which defines "debt" as "any legally enforceable obligation measured in a *certain amount* of money which must be performed or paid within an ascertainable period of time or on demand" (emphasis added), and (2) section 171.109(a)(1), which provides that "surplus" includes "unrealized, es-

timated, or contingent losses or obligations." *See* Tex.Tax Code Ann. § 171.109(a)(1), (3) (West 1992). The Comptroller argues that Caterpillar's liability does not meet the definition of "debt" and therefore falls within the category of estimated liabilities that must be included in surplus. Caterpillar argues that its future benefits liability may be statistically calculated with a relatively high degree of accuracy and therefore qualifies as debt and not an "estimated" liability. We find Caterpillar's argument to be unpersuasive.

■ The Comptroller's position is clearly supported both by the plain language of the statute and the legislature's apparent intent in enacting it. Caterpillar concedes that its future liability for the benefits at issue cannot be precisely determined in advance for any given individual and that any prediction of its liability in the aggregate depends upon assumptions that may or may not prove to be true. Caterpillar argues, however, that sophisticated actuarial methods produce reasonably accurate figures for its liability, providing sufficient certainty under the Tax Code to allow deduction of the liability from surplus. The statute makes clear, however, that a liability may not be deducted from surplus unless it can be exactly determined, no matter how accurately it may be estimated.

■ Caterpillar's liability cannot qualify as debt because it is not a "*certain* amount of money." *Id.* § 171.109(a)(3) (emphasis added). Caterpillar's liability must, of necessity, be forecast; it cannot be determined precisely in advance, even in the aggregate. "Certain" is defined as fixed, exact, or precise. *Webster's Third New International Dictionary* 367 (Philip B. Gove ed., 1986). Caterpillar's future liability is not fixed, exact, or precise, but instead is an actuarial forecast. Because the liability is not a sum certain, it does not fall within the statutory definition of "debt," which may be deducted from surplus. Caterpillar's liability is, on the contrary, estimated. An estimate is a rough or approximate calculation, or a judgment made from incomplete data. *Id.* at 779. The eventual accuracy of a prediction does not change its character as being presently uncertain. The

plain meaning of "estimate" precisely describes Caterpillar's statistical forecast of its liability. No matter how accurate, Caterpillar's calculation depends upon assumptions and is therefore an approximation, derived mathematically from the available data. Accordingly, the Tax Code requires that Caterpillar's estimated liability be included in its surplus. *See* Tex. Tax Code Ann. § 171.109(a)(1) (West 1992).

Our analysis is further supported by the statute's legislative history. *See* Code Construction Act, Tex.Gov't Code Ann. §§ 311.023(3), 312.005 (West 1988). Section 171.109(a)(1) was intended to overturn our *Sun* cases. In the *Sun* cases, we held that liabilities could be excluded from surplus, *if they were reasonably estimated*, in order to reflect the true financial condition of the taxpayer. *Sun Ref. & Mktg.*, 740 S.W.2d at 555. We may therefore infer that the legislature, in passing section 171.109(a), intended to include in surplus all estimates of future liability, even reasonably accurate ones. Caterpillar's liability is just this type of reasonable estimate. If we adopted Caterpillar's argument, we would return to our *Sun* holding in flagrant disregard of the legislature's evident intent to the contrary.

*(ii) ERISA Preemption*

The Comptroller next argues that the district court erred in holding that ERISA preempts the relevant provisions of the Tax Code. ERISA provides uniform and comprehensive federal regulation of employee benefit plans. ERISA protects employees' interests in their benefit plans and promotes efficiency by making regulation of benefits plans an exclusively federal concern. ERISA subjects employee benefit plans to participation, funding, and vesting requirements, and provides uniform standards for reporting, disclosure, and fiduciary responsibility. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90–91, 103 S.Ct. 2890, 2896–97, 77 L.Ed.2d 490 (1983).

■ To promote the goal of uniform and exclusive federal regulation, section 514(a) of ERISA expressly preempts "any and all

State laws insofar as they may now or hereafter *relate to* any employee benefit plan...." 29 U.S.C. § 1144(a) (1994) (emphasis added); *see Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981). Both parties agree that Caterpillar provides its post-retirement benefits pursuant to a plan covered by ERISA, and the Tax Code clearly qualifies as an applicable state law. Therefore the issue in this appeal, as in most ERISA-preemption cases, is whether the applicable state law "relates to" employee benefit plans. Because ERISA is a federal statute, we are bound by the precedents of the United States Supreme Court and give strong consideration to opinions of the federal appellate courts as persuasive authority. *Ex parte Twedell*, 158 Tex. 214, 309 S.W.2d 834, 844 (1958); *Barstow v. State*, 742 S.W.2d 495, 501 n. 2 (Tex.App.—Austin 1987, writ denied); *Olson v. Holmes*, 571 S.W.2d 211, 213 (Tex.Civ.App.—Austin 1978), *writ ref'd n.r.e. per curiam*, 587 S.W.2d 678 (Tex.1979).

■ The United States Supreme Court has established an analytical framework for ERISA preemption, holding that a state law "relates to" a benefit plan covered by ERISA "if it has a *connection with* or *reference to* such a plan." *Shaw*, 463 U.S at 97, 103 S.Ct. at 2900 (emphasis added). Although ERISA preemption is broad, it is not unlimited: a state law will not be preempted if it has only a "tenuous, remote, or peripheral" connection with plans covered by ERISA. *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, —— U.S. ——, ——, 115 S.Ct. 1671, 1680, 131 L.Ed.2d 695 (1995); *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 130 n. 1, 113 S.Ct. 580, 583 n. 1, 121 L.Ed.2d 513 (1992); *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. Although it is not difficult to discern whether a law *refers to* plans covered by ERISA, determining whether a law has a sufficiently significant *connection with* ERISA plans to warrant preemption has proved to be a thorny problem. Neither statute at issue in this appeal makes reference to ERISA plans;[6] therefore, we must

---

6. Although Tax Code section 171.109(j) makes

explicit reference to employee *benefits* that may

determine whether either statute has a sufficient connection with ERISA plans to warrant preemption.

The federal courts have developed a two-tiered method for analyzing ERISA "connection" preemption. *See* Kevin Matz, Note, *ERISA's Preemption of State Tax Laws,* 61 Fordham L.Rev. 401, 416–17 (1992). On the first tier are two bright-line tests: the state law is preempted if it conflicts with ERISA's substantive provisions or if the state legislature specifically targeted the law to affect ERISA plans. *See, e.g., FMC Corp. v. Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 407–08, 112 L.Ed.2d 356 (1990); *Mackey v. Lanier Collection Agency,* 486 U.S. 825, 829, 838 n. 12, 108 S.Ct. 2182, 2185, 2190 n. 12, 100 L.Ed.2d 836 (1988); *Alessi,* 451 U.S. at 524–25, 101 S.Ct. at 1906–07; *Keystone Chapter, Associated Builders & Contractors, Inc. v. Foley,* 37 F.3d 945, 955 (3d Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1393, 131 L.Ed.2d 244 (1995); *Aetna Life Ins. Co. v. Borges,* 869 F.2d 142, 146 (2d Cir.1989); *see also Thiokol Corp. v. Roberts,* 76 F.3d 751, 758–59 (6th Cir.1996); *E–Systems, Inc. v. Pogue,* 929 F.2d 1100, 1102–03 (5th Cir.1991). If a law survives the first-tier test, the federal courts proceed to a second tier of analysis to determine whether the law is nevertheless preempted because it has a substantial indirect effect on ERISA plans. *See Travelers,* — U.S. at — – —, 115 S.Ct. at 1677–1680; *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990); Matz, 61 Fordham L.Rev. at 417. Unlike the first tier's bright-line rules, the second tier consists of a balancing test employing various factors. *Compare Foley,* 37 F.3d at 955 *with Arkansas Blue Cross & Blue Shield v. St. Mary's Hosp., Inc.,* 947 F.2d 1341, 1344–45 (8th Cir.1991), *cert. denied,* 504 U.S. 957, 112 S.Ct. 2305, 119 L.Ed.2d 227 (1992) *and Borges,* 869 F.2d at 146 *and Firestone Tire & Rubber Co. v. Neusser,* 810 F.2d 550, 555–56 (6th Cir.1987). The Supreme Court's recent *Travelers* opinion gives courts guidance in the second-tier preemption analysis, but its exact contours

remain somewhat vague. *See Travelers,* — U.S. at — – —, 115 S.Ct. at 1677–1680.

Caterpillar argues section 171.109(j) of the Tax Code is preempted by ERISA. We need not decide this question, however, because preemption of section 171.109(j) would not dispose of this appeal. Subsection (j)'s specific injunction concerning estimated employee benefit liabilities simply clarifies one particular application of the general rule contained in section 171.109(a)(1). Section 171.109(a)(1), standing alone, provides that all "unrealized, estimated, or contingent losses or obligations" must be included in a corporation's surplus. Tex.Tax Code Ann. § 171.109(a)(1) (West 1992). As we have previously discussed, one type of liability covered by this broad category is Caterpillar's estimated liability for the post-retirement benefits at issue here. Therefore, even if section 171.109(j) is preempted by ERISA, Caterpillar's liabilities would still be included in surplus under the rule of section 171.109(a)(1). Accordingly, we will assume, without deciding, that ERISA preempts section 171.109(j) and proceed to consider whether ERISA preempts section 171.109(a)(1).

Section 171.109(a)(1) of the Tax Code does not run afoul of first-tier "connection" preemption. The statute clearly does not conflict with ERISA's substantive provisions; ERISA does not impose any form of tax and does not address state tax treatment of covered plans. Nor was section 171.109(a)(1) specifically targeted at ERISA plans. The statute was intended to be generally applicable to all types of contingent and estimated liabilities. It appears that the general purpose of the statute was to overturn the *Sun* cases; that fact does not, however, indicate that the statute was specifically targeted at ERISA plan benefits. ERISA benefits were only one of several different types of contingent and estimated liabilities addressed in the *Sun* cases. *See Sun Ref. & Mktg.,* 740 S.W.2d at 553–56; *Sun Oil Co. (Delaware),* 740 S.W.2d at 557–58. Indeed, the *Sun* cases primarily addressed various types of

---

be provided by ERISA plans, the Supreme Court has specifically held that a reference to benefits but not plans does not suffice to invoke "reference" preemption. *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 7, 107 S.Ct. 2211, 2215, 96 L.Ed.2d 1 (1987).

contingent liabilities incurred in the oil and gas industry. *See Sun Ref. & Mktg.*, 740 S.W.2d at 553–56; *Sun Oil Co. (Delaware)*, 740 S.W.2d at 557–58. We conclude that Tax Code section 171.109(a)(1) is a generally applicable statute that catches ERISA plans in its broad sweep; therefore, the statute was not specifically targeted at ERISA benefits and is not subject to first-tier preemption.

Next, we must determine whether the statute is nevertheless subject to second-tier preemption due to its indirect effect on ERISA plans. Although the United States Supreme Court has never considered ERISA's preemptive effect on a generally applicable state tax law, the Court's recent opinion in *Travelers* indicates that second-tier preemption is disfavored and, accordingly, generally applicable state laws will not be preempted simply because they have the indirect effect of raising the cost to operate an ERISA plan. *See Travelers,* —— U.S. at ——–——, 115 S.Ct. at 1680–81. In *Travelers*, the Court considered a New York statute that imposed on certain providers of medical care, as part of a general health-care regulation scheme, a surcharge that would be used to subsidize Blue Cross and Blue Shield. Travelers argued that the statute was preempted by ERISA because the surcharge would raise costs for ERISA insurance plans purchasing medical coverage from the affected providers. After quickly noting that the statute did not fall afoul of any first-tier preemption test, the Court discussed at length the issue of second-tier preemption.

In framing its analysis, the Court noted that second-tier preemption must be guided by ERISA's objective of preventing a multiplicity of inconsistent state regulations that would jeopardize the uniform administration of employee benefit plans. *Id.* at —— ——, 115 S.Ct. at 1677–78. The Court held that the New York statute was not preempted, because it simply raised the cost of medical care to some plans and did not threaten the uniform interstate administration of ERISA plans:

> Nor does the indirect influence of the surcharges preclude … the provision of a uniform interstate benefit package if a plan wishes to provide one. It simply bears on

the costs of benefits and the relative costs of competing insurance to provide them. *Id.* at ——–——, 115 S.Ct. at 1679. The Court held that a mere increase of cost to ERISA plans would not warrant preemption, because a contrary holding would lead to the absurd result of preempting all of the many state laws that impose indirect costs by requiring safety standards, quality standards, and so on. *Id.* at ——–——, 115 S.Ct. at 1679–80. Accordingly, the Court held that the statute was not preempted, because it had "only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability." *Id.* at ——–——, 115 S.Ct. at 1680 (quoting *Greater Washington Bd. of Trade,* 506 U.S at 130 n. 1, 113 S.Ct. at 583 n. 1).

The Court in *Travelers* followed a clear trend in the federal circuits to disfavor second-tier preemption and uphold generally applicable state laws that affect ERISA plans only by indirectly increasing their costs of operation. In a seminal decision, the Second Circuit had earlier held that general state laws increasing regulatory costs do not threaten the uniform administration of ERISA plans, and ERISA preemption of such laws would give plans a special status never intended by Congress:

> A preemption provision designed to prevent state interference with federal control of ERISA plans does not require the creation of a fully insulated legal world that excludes these plans from regulation of any purely local transaction.
>
> . . . .
>
> In short, if ERISA is held to invalidate every State action that may increase the cost of operating employee benefit plans, those plans will be permitted a charmed existence that never was contemplated by Congress. Where, as here, a State statute of general application does not affect the structure, the administration, or the type of benefits provided in an ERISA plan, the mere fact that the statute has some economic impact on the plan does not require that the statute be invalidated.

*Rebaldo v. Cuomo,* 749 F.2d 133, 139 (2d Cir.1984) (footnote omitted). Every federal circuit that has considered such a generally

applicable state law has followed the same or similar reasoning and held that ERISA does not preempt the law. *See, e.g., Thiokol Corp. v. Roberts,* 76 F.3d 751, 762 (6th Cir.1996) (state value-added tax); *Boyle v. Anderson,* 68 F.3d 1093, 1110 (8th Cir.1995) (state health-care provider tax); *Minnesota Chapter of Assoc. Builders & Contractors, Inc. v. Minnesota Dep't of Labor & Indus.,* 47 F.3d 975, 979–80 (8th Cir.1995) (state prevailing wage law); *Combined Management, Inc. v. Superintendent of Bureau of Ins.,* 22 F.3d 1, 7 (1st Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 350, 130 L.Ed.2d 306 (1994) (state statute requiring that worker's compensation plans be kept separate from ERISA plans); *Keystone Chapter, Associated Builders & Contractors, Inc. v. Foley,* 37 F.3d 945, 963 (3d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1393, 131 L.Ed.2d 244 (1995) (state prevailing wage law); *United Wire, Metal & Machine Health & Welfare Fund v. Morristown Memorial Hosp.,* 995 F.2d 1179, 1195 (3d Cir.), *cert. denied,* 510 U.S. 944, 114 S.Ct. 382, 126 L.Ed.2d 332 (1993) (state statute setting rates for health-care providers); *Aetna Life Ins. Co. v. Borges,* 869 F.2d 142, 149 (2nd Cir.1989) (state escheat law); *Firestone Tire & Rubber Co. v. Neusser,* 810 F.2d 550, 556 (6th Cir.1987) (municipal income tax); *see also McDonald v. Houston Brokerage, Inc.,* 928 S.W.2d 633, 638–39 (Tex.App.—Corpus Christi 1996, no writ h.).

The Sixth Circuit has twice specifically held that ERISA does not preempt generally applicable state taxes. *Thiokol,* 76 F.3d at 762; *Neusser,* 810 F.2d at 556. In *Neusser,* the court considered a two-percent municipal income tax. After dispensing with first-tier preemption, the court quoted *Rebaldo* and held that the same reasoning applied to the municipal tax, making its effect on ERISA plans incidental only: "We hold only that where, as here, a municipality enacts a neutral income tax of general application which applies to employees without regard to their status as ERISA participants, that tax is not preempted by ERISA." *Neusser,* 810 F.2d at 556. More recently, the Sixth Circuit considered Michigan's state value-added tax ("VAT") in *Thiokol.* Thiokol argued that ERISA preempted the portion of the statute that required taxpayers to include all em-

ployee compensation, including employee benefits, as part of the VAT base. The court, citing *Neusser* and *Travelers,* disagreed and held that the Michigan statute was not preempted, because it was a generally applicable law that had only a peripheral effect on ERISA plans:

> [T]he Supreme Court does not require that state laws have absolutely zero effect on ERISA plans, for this likely would be impossible as a matter of logic or practicality. State property, contract, and tort law all surely have some effect on ERISA plans, but they are not preempted.... [S]tate laws of general applicability can have effects on ERISA plans and still escape preemption.

*Thiokol,* 76 F.3d at 755.

The only opinion that could arguably support preemption in this case is *Morgan Guaranty Trust Co. v. Tax Appeals Tribunal,* 80 N.Y.2d 44, 587 N.Y.S.2d 252, 599 N.E.2d 656 (1992). In *Morgan Guaranty,* the New York Court of Appeals considered a ten percent state tax on the profit of any real estate transaction in which the total consideration exceeded one million dollars. Morgan Guaranty, which paid the tax for property it sold as trustee of an ERISA plan, argued that ERISA preempted the tax, and the court agreed. The court reasoned that, although the tax did not run afoul of any first-tier preemption factors, it was preempted under a second-tier analysis due to its indirect effect on ERISA plans. *Id.* at 253–56, 599 N.E.2d at 657–60. First, the court noted that the tax would subject plans to the administrative burden of additional record keeping and reporting requirements to comply with the tax. Second, and more important, the court noted that the tax would affect a plan's investment strategy by altering economic incentives for the sale of real estate. Significantly, the court noted that the tax was not simply "a 'cost of doing business' law, ... but a tax applied directly to the income derived from appreciation of a Plan asset." *Id.* at 256, 599 N.E.2d at 660. The court distinguished *Neusser,* reasoning that the municipal tax in that case was simply a "cost of doing business law," whereas the New York tax directly depleted plan

assets by taxing their profits. *Id.* at 257, 599 N.E.2d at 661.

*Morgan Guaranty* is not persuasive authority in this appeal. First, the court explicitly distinguished the New York tax from a generally applicable "cost of doing business" tax such as that in *Neusser.* The franchise tax in the present case falls in the same category as the tax in *Neusser,* because it does not directly tax plan profits, but simply increases plans' costs of *doing business.* Second, the Supreme Court in *Travelers* explicitly rejected the core reasoning used by the New York court, holding instead that a change in economic incentive that merely affects a plan's "shopping decisions" does not warrant preemption. *Travelers,* —— U.S. at ——, 115 S.Ct. at 1679. The Supreme Court also explicitly held that indirect increases in administrative costs, such as the paperwork and disclosure requirements in *Morgan Guaranty,* do not warrant preemption. *Id.* at —— – ——, 115 S.Ct. at 1679–80. Accordingly, we conclude that *Morgan Guaranty* cannot be used to support preemption in this case.

Caterpillar also argues that the Fifth Circuit's opinion in *E–Systems, Inc. v. Pogue,* 929 F.2d 1100 (5th Cir.1991), supports preemption in this case. In *E–Systems,* the Fifth Circuit considered and held preempted a Texas tax explicitly targeted at, and intended to specifically affect, ERISA plan assets. *E–Systems,* 929 F.2d at 1101–02. Thus, first-tier preemption was warranted in *E–Systems,* and a second-tier preemption analysis was unnecessary. Caterpillar argues that the Fifth Circuit's reasoning indicates that any tax must be preempted if it has an economic impact on ERISA plans. *See id.* at 1103. We disagree. First, we believe that this argument is misplaced, because the court was responding to the State's argument that economic impact alone, in the context of a tax targeted at ERISA plans, cannot warrant preemption. *Id.* Second, we think Caterpillar's argument proves too much, because it would require preemption of the many state laws and regulations that indirectly raise costs of ERISA plans. Again, such reasoning has been rejected by the Supreme Court in *Travelers* and by every federal circuit

court of appeals that has addressed the issue. *See, e.g., Travelers,* ——. U.S. at ——, 115 S.Ct. at 1679.

■■■ We hold that ERISA does not preempt section 171.109(a)(1) of the Texas Tax Code. The statute is part of a generally applicable tax scheme that incidentally raises the costs of doing business for some ERISA plans; therefore, the statute's connection to ERISA plans is too tenuous, remote, and ephemeral to warrant preemption. Our conclusion is supported by the Supreme Court's most recent opinion on the subject and by a consensus in the federal appellate courts. We also draw support from the Supreme Court's well-settled presumption against preemption unless clearly intended by Congress: "[W]e have worked on the 'assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Travelers,* —— U.S. at ——, 115 S.Ct. at 1676 (citations omitted) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). Congress intended, in drafting ERISA's preemption clause, primarily to prevent conflicting regulations that would inhibit the uniform administration of employee benefit plans. *Travelers,* —— U.S. at —— – ——, 115 S.Ct. at 1677–78. We cannot say that Congress clearly and manifestly intended to preempt indirect increases in the costs of ERISA plan operations caused by a state's traditional power to tax corporations for the privilege of doing business.

*(iii) Equal and Uniform Taxation*

■■■ Finally, the Comptroller argues that the district court erred in holding that Tax Code section 171.109 violates the Texas constitutional requirement that all taxation be "equal and uniform." *See* Tex. Const. art. VIII, § 1(a). Caterpillar responds that the statute is constitutionally infirm both on its face and as applied by the Comptroller in this particular cause.

■■■ Caterpillar argues that the statute is unconstitutional on its face because it allows taxpayers to deduct certain estimated accounts from surplus notwithstanding the gen-

eral rule of inclusion contained in section 171.109(a)(1):

> (i) The following accounts may also be excluded from surplus . . .:
>
> > (1) a reserve or allowance for uncollectable accounts; and
> >
> > (2) a contra-asset account for depletion, depreciation, or amortization.

Tex.Tax Code Ann. § 171.109(i) (West 1992). Caterpillar contends that section 171.109 is unconstitutional because there is no rational basis for allowing the accounts listed in subsection (i) to be deducted from surplus, but not allowing a deduction for the post-retirement benefits at issue in this appeal. We will uphold a tax classification unless it has no rational basis. *Hurt v. Cooper*, 130 Tex. 433, 110 S.W.2d 896, 901 (1937). When reviewing statutes relating to taxation, we indulge a strong presumption of constitutional validity. *Vinson v. Burgess*, 773 S.W.2d 263, 266 (Tex.1989).

We reject Caterpillar's argument for two reasons. First, we believe that a rational basis exists for distinguishing between the accounts made deductible by subsection (i) and the employee benefits at issue in this appeal. In each case under subsection (i), the taxpayer has an existing asset the value of which is being adjusted downward to reflect its true value due to depreciation, depletion, amortization, or uncollectible debt. Thus, the deductions in subsection (i) are necessary to reflect the true, current value of a presently owned asset. Caterpillar's liability, on the other hand, will occur in the future and does not relate to the value of a presently held asset; although Caterpillar's post-retirement benefits will, at some point in the future, reduce the amount of general revenue, they are not tied to a specific asset

presently held by Caterpillar. Therefore, Caterpillar is able to presently use the general revenue for other purposes until the liability becomes due in the future, whereas the "contra-asset" accounts enumerated in subsection (i) reflect money not available for present use by the taxpayer. This Court has previously noted that such a distinction is a reasonable one for fashioning tax policy. *See State v. Shell Oil Co.*, 747 S.W.2d 54, 56 (Tex.App.—Austin 1988, no writ). We therefore conclude that the legislature had a rational basis for distinguishing between the accounts listed in subsection (i) and Caterpillar's future employee benefit liability.

▮▮▮▮ Second, Caterpillar's claim fails as a matter of law because section 171.109 treats all taxpayers in the same manner. Every franchise taxpayer is allowed to deduct the accounts listed in subsection (i), but not other estimated obligations. The constitutional mandate of equal and uniform taxation requires only "that all persons falling within the same class must be taxed alike." *See Hurt*, 110 S.W.2d at 901. The thrust of Caterpillar's argument, however, is that there is no reason to allow some deductions but not others, even though all taxpayers are subject to the same tax and the same deductions. This is a matter of policy for determination by the legislature and does not warrant intervention under the banner of the equal and uniform taxation provision of the Texas Constitution.[7]

▮▮▮▮ Caterpillar next argues that section 171.109 is unconstitutional as applied in this case because the Comptroller allowed taxpayers to deduct estimated liability for unfunded pension benefits between 1989 and

---

7. Furthermore, it seems that Caterpillar might not prevail even if the statute were found to be unconstitutional on its face. The Comptroller argues that the remedy would be to declare only the exceptions unconstitutional and sever them from the statute, thereby requiring universal application of the taxing rule without the improper deductions. *See* Code Construction Act, Tex. Gov't Code Ann. §§ 311.032(c), 312.013(a) (West 1988) (invalid portions of statutes may be severed and valid portions applied). Although no Texas authority has squarely addressed the issue, a number of jurisdictions have held that the

remedy for an invalid tax exemption is to invalidate only the exemption and apply the general rule of taxation. *See Associated Grocers, Inc. v. State*, 114 Wash.2d 182, 787 P.2d 22, 26 (1990); *Department of Revenue v. Magazine Publishers of Am., Inc.*, 604 So.2d 459, 463–64 (Fla.1992); *Thayer v. South Carolina Tax Comm'n*, 307 S.C. 6, 413 S.E.2d 810, 815 (1992). *But see Dow Jones & Co. v. Tax Comm'n*, 787 P.2d 843, 847 (Okla.1990); *McGraw–Hill v. State Tax Comm'n*, 75 N.Y.2d 852, 552 N.Y.S.2d 915, 916, 552 N.E.2d 163, 164 (1990).

1991.[8] Caterpillar reasons that unfunded pension benefit liability is so similar to the life and health insurance liabilities at issue in this appeal that there was no rational basis for the Comptroller to allow deductions for the one but not the other during the three years at issue. We reject Caterpillar's argument under the same reasoning that applies to Caterpillar's facial challenge: all taxpayers were taxed in the same way. Caterpillar does not argue that the Comptroller treated one group of taxpayers differently from another, similar group; instead, it takes issue with the Comptroller's treatment of *all* taxpayers for the period of time in question. Therefore, Caterpillar's claim is not cognizable under the Texas constitutional guarantee of equal and uniform taxation. Moreover, even if we were to construe Caterpillar's argument as a cognizable constitutional claim, Caterpillar has failed to carry its burden of proof. To succeed in its claim, Caterpillar would have to show that the Comptroller's different treatment of deductions was tantamount to different treatment of taxpayers. In other words, Caterpillar would have to offer proof that, as applied to a large number of taxpayers, the liability classification actually resulted in discrimination between similarly situated taxpayers. *See Southern Clay Prods., Inc. v. Bullock*, 753 S.W.2d 781, 784 (Tex.App.—Austin 1988, no writ). Caterpillar failed to offer any summary-judgment proof that this actually happened to a large group of taxpayers, and therefore Caterpillar was not entitled to summary judgment on this issue.

Finally, Caterpillar argues that section 171.109 is unconstitutional as applied because the Comptroller allowed some taxpayers to deduct from surplus the benefits at issue in this appeal based solely on their accounting method, in violation of this Court's holding in *Bullock v. Sage Energy Co.*, 728 S.W.2d 465 (Tex.App.—Austin 1987, writ ref'd n.r.e.). Caterpillar alleges that, between 1988 and 1991, the Comptroller allowed taxpayers to deduct estimated liability for life and health insurance benefits if they "booked" the liability by reporting it on their balance sheet, but not if they kept the liability "unbooked" and reported it in a footnote to their balance sheet. Caterpillar has failed, however, to satisfy its burden of proof on this claim. As with its previous challenge to the statute as applied, Caterpillar had the burden to prove that this practice was actually followed for a large number of taxpayers. *See Southern Clay Prods.*, 753 S.W.2d at 784. Caterpillar has failed to offer summary-judgment proof that this was actually done with any taxpayer. Therefore, Caterpillar was not entitled to summary judgment on that claim. We sustain point of error one; to the extent they assert error in granting Caterpillar's motion for summary judgment, we also sustain points of error three, four, and five.

■■■ In point of error two, the Comptroller asserts that the trial court erred in failing to grant his own motion for summary judgment. The Comptroller failed, however, to conclusively prove the proposition that the statute was *not* applied to a large group of taxpayers in the manner alleged by Caterpillar. Accordingly, this claim presents a disputed issue of fact that precludes the rendition of summary judgment in favor of the Comptroller. We overrule point of error two; to the extent they assert error in failing to grant the Comptroller's motion for summary judgment, we also overrule points of error three, four, and five.

## CONCLUSION

The district court's summary judgment awarding Caterpillar a franchise tax refund is not supported by any of the three legal grounds asserted in Caterpillar's motion and therefore must be reversed. However, we cannot render judgment in favor of the Comptroller because there is a disputed issue of fact concerning Caterpillar's claim that the franchise tax was unconstitutional as applied in this case. Therefore, we sustain the Comptroller's first point of error, reverse the

---

**8.** The Comptroller concedes that these deductions were erroneous, because they were not authorized under section 171.109. The deductibility of pension benefits, however, is not at issue in this appeal; Caterpillar simply argues that it was unconstitutional for the Comptroller to deviate from the statute only with regard to pension benefits and not also with regard to the benefits at issue in this appeal.

trial court's judgment, and remand the cause to the district court for further proceedings consistent with this opinion.

Reversed and Remanded.