**ARCH PETROLEUM, INC., Appellant,**

v.

**John SHARP, Comptroller of Public Accounts of the State of Texas; Dan Morales, Attorney General of the State of Texas; and Martha Whitehead, Treasurer of the State of Texas, Appellees.**

No. 03–97–00143–CV.

Court of Appeals of Texas, Austin.

Dec. 18, 1997.

Ray Langenberg, Scott, Douglass, Luton & McConnico, L.L.P., Austin, for Appellant.

Dan Morales, Atty. Gen., Nancy L. Prosser, Asst. Atty. Gen., Taxation Division, Austin, for Appellees.

Before CARROLL, C.J., and JONES and KIDD, JJ.

JONES, Justice.

Appellant, Arch Petroleum, Inc. ("Arch") sued appellee, John Sharp, Comptroller of Public Accounts ("Comptroller"), to obtain a refund of franchise taxes paid under protest.[1] After a bench trial, the district court found the Comptroller's assessment of taxes to be correct. In one point of error, Arch contends the trial court erred in concluding that Arch must include in its franchise tax base $7 million in convertible redeemable preferred stock shares. We will reverse the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Arch is a publicly owned Nevada corporation involved with oil and gas exploration and development in Texas. On June 13, 1988, Arch entered into an agreement to sell to Citicorp shares of Arch's Series A convertible redeemable preferred stock. The agreement contained a mandatory redemption feature requiring Arch to pay Citicorp $3,500,000 in June 1995 and another $3,500,00 in June 1996 to redeem all of Citicorp's preferred stock holdings. The convertibility feature allowed Citicorp to convert some or all of the preferred stock for shares of Arch's common stock at anytime after one year from the signing of the agreement until the stock was redeemed.[2] Arch was audited for compliance with the 1989, 1990, and 1991 franchise tax report years and was found to be delinquent because it had denominated the obligation growing out of its $7 million of stock sold to Citicorp as "debt," thus allowing the amount of the obligation to be deducted from its franchise tax base. Arch paid, under protest, $227,111.16 in franchise tax and interest the brought suit against the Comptroller to recover that amount. *See* Tex. Tax Code Ann. §§ 112.051, .052 (West 1992 & Supp.1998). The trial court concluded that the convertibility feature rendered the obligation to redeem the stock both contingent and less than certain in value and,

---

1. Other statutorily required defendants were the State Treasurer and the State Attorney General. *See* Tex. Tax Code Ann. § 112.053(a) (West 1992 & Supp.1998).

2. The parties eventually entered into a completely new agreement on December 31, 1990, in which the preferred stock was exchanged for a combination of common stock, money, and accrued but unpaid dividends.

accordingly, that the Comptroller properly included the obligation in Arch's franchise tax base.

## DISCUSSION

■ In a single point of error, Arch contends the trial court erred in concluding that the stock was part of Arch's surplus because the stock's mandatory redemption feature required Arch to redeem the stock for $7 million, making the stock a "debt" of the corporation. Arch asserts that it had a fixed and determinable obligation to redeem the stock, in contrast to the trial court's conclusion that the obligation was both contingent and uncertain in value. A trial court's conclusion will be reversed if it is erroneous as a matter of law and not otherwise sustained by any other legal theory supported by the evidence. *See Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex. App.—Austin 1992, no writ).

■ The franchise tax is levied yearly on a corporation's taxable capital. Tex. Tax Code Ann. § 171.106 (West 1992) ("Tax Code"). In general, taxable capital is based on the owners' equity, otherwise known as net assets or net worth. *See Central Power & Light v. Bullock*, 696 S.W.2d 30, 31–33 (Tex. App.—Austin 1985, no writ). The franchise tax base includes a corporation's "surplus." Tax Code § 171.101(a)(1). "Surplus" means a corporation's net assets minus its stated capital. Tax Code § 171.109(a)(1). "Surplus" includes unrealized, estimated, or contingent losses or obligations. *Id.* "Net assets" consist of total assets minus total debts. Tax Code § 171.109(a)(2). "Debt" means "any legally enforceable obligation measured in a certain amount of money which must be performed or paid within an ascertainable period of time or on demand." Tax Code § 171.109(a)(3).

■ The import of these definitions in the present case is that if an obligation is contingent, it does not fall within the definition of "debt" and cannot be deducted from the franchise tax base; instead, it is included in "surplus" and is subject to the franchise tax. Likewise, if an obligation is not measured in a certain amount of money, it is not a debt and is not deducted from the amount of surplus. The trial court found that the obligation in question was both contingent and uncertain in value and, therefore, for either reason must be considered surplus and be subject to the franchise tax.

Both sides agree that if this obligation were not convertible, it would meet the statutory definition of debt. Arch argues that in several other contexts this obligation, even with its convertibility feature, would be considered debt. For example, Arch points out that the obligation was listed as debt in its annual reports, which were prepared in accordance with generally accepted accounting principles ("GAAP").[3] Additionally, Arch asserts that the annual reports complied with Securities and Exchange Commission regulations, which prohibited Arch from including the obligation in stockholders' equity. Likewise, for federal income tax purposes, convertible debt is ordinarily treated as pure debt until conversion actually occurs. *See* Boris I. Bittker and James S. Eustice, *Federal Income Taxation of Corporations and Shareholders*, § 4.60[1] (1994) (holder of convertible debt must forfeit benefits of his creditor position if he wishes to become shareholder).

However, the Comptroller correctly asserts that, in calculating franchise tax liability, the Texas Tax Code adds restrictions to GAAP definitions of debt and surplus. *See* Tax Code § 171.109(b). Arch responds that the obligation in question meets even these more restrictive definitions. The added restrictions that are in dispute here are the express inclusion of "contingent" liabilities within the definition of surplus and the express restriction of debt to obligations "measured in a certain amount of money." *See* Tax Code § 171.109(a). The narrow question that we must answer is whether the presence of the convertibility feature in the agreement between Arch and Citicorp renders the obli-

3. For an oft-cited discussion of the distinction between debt and equity, including a list of sixteen distinguishing factors, *see Fin Hay Realty Co. v. United States*, 398 F.2d 694, 696 (3d Cir. 1968).

gation either contingent or else not measured in a certain amount of money.

■ In construing a statute, a court may consider the administrative construction of the statute. Code Construction Act, Tex. Gov't Code Ann. § 311.023(6) (West 1988). Tax statutes, however, must be strictly construed against the taxing authority and liberally construed in favor of the taxpayer. *Bullock v. National Bancshares Corp.*, 584 S.W.2d 268, 271–72 (Tex.1979); *Sharp v. Direct Resources for Print, Inc.*, 910 S.W.2d 535, 538 (Tex.App.—Austin 1995, writ denied). Additionally, a court may consider the circumstances under which the statute was enacted. Code Construction Act § 311.023(2).

This Court recently discussed the background of relevant amendments to the franchise tax in *Sharp v. Caterpillar, Inc.*, 932 S.W.2d 230, 233–34 (Tex.App.—Austin 1996, writ denied). *Caterpillar* dealt with whether a corporation could report estimated retirement benefit obligations as "debt." Even though the amount of the obligation was actuarially estimable with a great deal of accuracy, we concluded that the statute requires more than an accurate estimate; it requires exact determination. *Id.* at 234. In so concluding, we pointed out that the 1987 amendments affecting the definitions of surplus and debt were intended to overturn the *Sun* cases,[4] in which this Court had held that liabilities, if reasonably estimated, could be excluded from surplus in order to reflect the true financial condition of the taxpayer. *Caterpillar*, 932 S.W.2d at 233. It is in consideration of those circumstances that we now look at the application of the statutes in question.

■ The Tax Code does not define "contingent," but its common meaning is "of possible occurrence: likely but not certain to happen"; "dependent on, associated with, or conditioned by something else." *Webster's New International Dictionary* 493 (Philip B. Gove ed., 1986). Thus, a contingent obligation is one in which liability has not been incurred with certainty. In the *Sun* cases,

this Court allowed taxpayers to exclude reasonable estimates of contingent liabilities through devices such as self-insurance accounts, bad-debts accounts, and other accounts for uncertain liabilities connected with the oil and gas industry. *Caterpillar*, 932 S.W.2d at 233. These accounts were established for liabilities that, although highly likely to occur in conducting business in the oil and gas industry, had not yet actually occurred. The Legislature effectively overruled the *Sun* cases by defining surplus to include all contingent liabilities, which would include obligations like the ones in the *Sun* cases that were reasonably anticipated but had not yet actually been incurred. In contrast, the obligation in this case had already been incurred, namely when Arch received cash from Citicorp in exchange for the convertible securities. A contingent obligation that must be included in surplus is one in which the actual incurrence of liability is still uncertain. The convertibility feature present here did not render questionable *whether* the obligation had been incurred, but only *how* it would be satisfied—by cash or shares of common stock. We conclude that under the present facts, Arch's obligation was not contingent.

■ Arch also asserts that its obligation was measured in a certain amount of money. The Comptroller argues that, because the liability may be extinguished by conversion to common stock, it was not certain. In *Caterpillar*, on which both parties rely, this Court found that the obligation in question was not for a certain amount of money, but rather was only a reliable estimate of what the obligation might be. *Id.* at 235. Likewise, in the *Sun* cases, several of the devices were amounts of possible future liabilities that had been reasonably estimated. *Id.* at 233. In the present case, however, the amount of the incurred liability was set by the parties to the agreement at $7 million. This is not an estimate or forecast, but a fixed, exact, and precise obligation. The fact that Citicorp had the option of receiving even greater value through the exercise of an option to receive common stock instead of the

---

4. *State v. Sun Refining & Marketing, Inc.*, 740 S.W.2d 552 (Tex.App.—Austin 1987, writ denied); *State v. Sun Oil Co. (Delaware)*, 740 S.W.2d 556 (Tex.App.—Austin 1987, no writ).

cash payments did not change Arch's position. Furthermore, the statute requires only that the obligation be *measured* in an amount of money; there is no requirement that it be *satisfied* in that amount of money. Arch's obligation was measured as $7 million, but allowed Citicorp to require satisfaction in shares of common stock rather than cash. The fact that Citicorp could choose a different form of satisfaction, however, namely conversion into common stock, did not mean that the obligation was not measured in a certain amount of money.

The Comptroller essentially bases its argument in favor of taxing the obligation in question on the idea that if Citicorp exercised its conversion option, Arch's liability would be reduced or eliminated, and therefore the obligation was contingent and uncertain in amount. We conclude that exercising the conversion option would not have had the effect of reducing or eliminating Arch's obligation, but rather would only have changed the form of how Arch's obligation must be satisfied. We do not read the wording or construe the purpose of the 1987 amendments to be so broad as to include as surplus, instead of debt, an obligation in which the obligee has the option of requiring satisfaction in cash or stock, as long as the liability is itself measured in a certain amount of money.[5] Here, the liability was measured in a certain amount of money, namely $7 million. Citicorp would be unlikely to exercise its conversion option unless the common stock was worth at least that much. Arch's point of error is sustained.

### CONCLUSION

We conclude as a matter of law that Arch's obligation to Citicorp fell within the Tax Code's definition of debt and should have been excluded from the calculation of Arch's surplus for franchise tax purposes. Accordingly, we reverse the trial court's judgment and render judgment that the Comptroller refund to Arch the sum of $227,111.16, together with the pro rata interest earned

thereon as provided for in Tex. Tax Code Ann. § 112.060(a) (West Supp.1998).

---

5. Nor do we construe the amendments so narrowly that they apply only to the same specific type of estimated or contingent liability accounts

found in the *Sun* cases. *See, e.g., Caterpillar,* 932 S.W.2d at 235.