TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00143-CV






Arch Petroleum, Inc., Appellant



v.



John Sharp, Comptroller of Public Accounts of the State of Texas; Dan Morales,


Attorney General of the State of Texas; and Martha Whitehead,


Treasurer of the State of Texas, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 96-02757, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING 






 Appellant, Arch Petroleum, Inc. ("Arch") sued appellee, John Sharp, Comptroller of Public
Accounts ("Comptroller"), to obtain a refund of franchise taxes paid under protest. (1) After a bench trial,
the district court found the Comptroller's assessment of taxes to be correct. In one point of error, Arch
contends the trial court erred in concluding that Arch must include in its franchise tax base $7 million in
convertible redeemable preferred stock shares. We will reverse the trial court's judgment.


FACTUAL AND PROCEDURAL BACKGROUND

 Arch is a publicly owned Nevada corporation involved with oil and gas exploration and
development in Texas. On June 13, 1988, Arch entered into an agreement to sell to Citicorp shares of
Arch's Series A convertible redeemable preferred stock. The agreement contained a mandatory
redemption feature requiring Arch to pay Citicorp $3,500,000 in June 1995 and another $3,500,00 in June
1996 to redeem all of Citicorp's preferred stock holdings. The convertibility feature allowed Citicorp to
convert some or all of the preferred stock for shares of Arch's common stock at anytime after one year
from the signing of the agreement until the stock was redeemed. (2) Arch was audited for compliance with
the 1989, 1990, and 1991 franchise tax report years and was found to be delinquent because it had
denominated the obligation growing out of its $7 million of stock sold to Citicorp as "debt," thus allowing
the amount of the obligation to be deducted from its franchise tax base. Arch paid, under protest,
$227,111.16 in franchise tax and interest the brought suit against the Comptroller to recover that amount. 
See Tex. Tax Code Ann. §§ 112.051, .052 (West 1992 & Supp. 1998). The trial court concluded that
the convertibility feature rendered the obligation to redeem the stock both contingent and less than certain
in value and, accordingly, that the Comptroller properly included the obligation in Arch's franchise tax base.


DISCUSSION

 In a single point of error, Arch contends the trial court erred in concluding that the stock
was part of Arch's surplus because the stock's mandatory redemption feature required Arch to redeem
the stock for $7 million, making the stock a "debt" of the corporation. Arch asserts that it had a fixed and
determinable obligation to redeem the stock, in contrast to the trial court's conclusion that the obligation
was both contingent and uncertain in value. A trial court's conclusion will be reversed if it is erroneous as
a matter of law and not otherwise sustained by any other legal theory supported by the evidence. See
Westech Eng'g, Inc. v. Clearwater Constructors, Inc., 835 S.W.2d 190, 196 (Tex. App.--Austin
1992, writ denied).

 The franchise tax is levied yearly on a corporation's taxable capital. Tex. Tax Code Ann.
§ 171.106 (West 1992) ("Tax Code"). In general, taxable capital is based on the owners' equity,
otherwise known as net assets or net worth. See Central Power & Light v. Bullock, 696 S.W.2d 30,
31-33 (Tex. App.--Austin 1985, no writ). The franchise tax base includes a corporation's "surplus." Tax
Code § 171.101(a)(1). "Surplus" means a corporation's net assets minus its stated capital. Tax Code §
171.109(a)(1). "Surplus" includes unrealized, estimated, or contingent losses or obligations. Id. "Net
assets" consist of total assets minus total debts. Tax Code § 171.109(a)(2). "Debt" means "any legally
enforceable obligation measured in a certain amount of money which must be performed or paid within an
ascertainable period of time or on demand." Tax Code § 171.109(a)(3).

 The import of these definitions in the present case is that if an obligation is contingent, it
does not fall within the definition of "debt" and cannot be deducted from the franchise tax base; instead,
it is included in "surplus" and is subject to the franchise tax. Likewise, if an obligation is not measured in
a certain amount of money, it is not a debt and is not deducted from the amount of surplus. The trial court
found that the obligation in question was both contingent and uncertain in value and, therefore, for either
reason must be considered surplus and be subject to the franchise tax.

 Both sides agree that if this obligation were not convertible, it would meet the statutory
definition of debt. Arch argues that in several other contexts this obligation, even with its convertibility
feature, would be considered debt. For example, Arch points out that the obligation was listed as debt in
its annual reports, which were prepared in accordance with generally accepted accounting principles
("GAAP"). (3) Additionally, Arch asserts that the annual reports complied with Securities and Exchange
Commission regulations, which prohibited Arch from including the obligation in stockholders' equity. 
Likewise, for federal income tax purposes, convertible debt is ordinarily treated as pure debt until
conversion actually occurs. See Boris I. Bittker and James S. Eustice, Federal Income Taxation of
Corporations and Shareholders, § 4.60[1] (1994) (holder of convertible debt must forfeit benefits of his
creditor position if he wishes to become shareholder).

 However, the Comptroller correctly asserts that, in calculating franchise tax liability, the
Texas Tax Code adds restrictions to GAAP definitions of debt and surplus. See Tax Code § 171.109(b). 
Arch responds that the obligation in question meets even these more restrictive definitions. The added
restrictions that are in dispute here are the express inclusion of "contingent" liabilities within the definition
of surplus and the express restriction of debt to obligations "measured in a certain amount of money." See
Tax Code § 171.109(a). The narrow question that we must answer is whether the presence of the
convertibility feature in the agreement between Arch and Citicorp renders the obligation either contingent
or else not measured in a certain amount of money.

 In construing a statute, a court may consider the administrative construction of the statute. 
Code Construction Act, Tex. Gov't Code Ann. § 311.023(6) (West 1988). Tax statutes, however, must
be strictly construed against the taxing authority and liberally construed in favor of the taxpayer. Bullock
v. National Bancshares Corp., 584 S.W.2d 268, 271-72 (Tex. 1979); Sharp v. Direct Resources for
Print, Inc., 910 S.W.2d 535, 538 (Tex. App.--Austin 1995, writ denied). Additionally, a court may
consider the circumstances under which the statute was enacted. Code Construction Act § 311.023(2).

 This Court recently discussed the background of relevant amendments to the franchise tax
in Sharp v. Caterpillar, Inc., 932 S.W.2d 230, 233-34 (Tex. App--Austin 1996, writ denied). 
Caterpillar dealt with whether a corporation could report estimated retirement benefit obligations as
"debt." Even though the amount of the obligation was actuarially estimable with a great deal of accuracy,
we concluded that the statute requires more than an accurate estimate; it requires exact determination. Id.
at 234. In so concluding, we pointed out that the 1987 amendments affecting the definitions of surplus and
debt were intended to overturn the Sun cases, (4) in which this Court had held that liabilities, if reasonably
estimated, could be excluded from surplus in order to reflect the true financial condition of the taxpayer. 
Caterpillar, 932 S.W.2d at 233. It is in consideration of those circumstances that we now look at the
application of the statutes in question.

 The Tax Code does not define "contingent," but its common meaning is "of possible
occurrence: likely but not certain to happen"; "dependent on, associated with, or conditioned by something
else." Webster's New International Dictionary 493 (Philip B. Gove ed., 1986). Thus, a contingent
obligation is one in which liability has not been incurred with certainty. In the Sun cases, this Court allowed
taxpayers to exclude reasonable estimates of contingent liabilities through devices such as self-insurance
accounts, bad-debts accounts, and other accounts for uncertain liabilities connected with the oil and gas
industry. Caterpillar, 932 S.W.2d at 233. These accounts were established for liabilities that, although
highly likely to occur in conducting business in the oil and gas industry, had not yet actually occurred. The
Legislature effectively overruled the Sun cases by defining surplus to include all contingent liabilities, which
would include obligations like the ones in the Sun cases that were reasonably anticipated but had not yet
actually been incurred. In contrast, the obligation in this case had already been incurred, namely when Arch
received cash from Citicorp in exchange for the convertible securities. A contingent obligation that must
be included in surplus is one in which the actual incurrence of liability is still uncertain. The convertibility
feature present here did not render questionable whether the obligation had been incurred, but only how
it would be satisfied--by cash or shares of common stock. We conclude that under the present facts,
Arch's obligation was not contingent.

 Arch also asserts that its obligation was measured in a certain amount of money. The
Comptroller argues that, because the liability may be extinguished by conversion to common stock, it was
not certain. In Caterpillar, on which both parties rely, this Court found that the obligation in question was
not for a certain amount of money, but rather was only a reliable estimate of what the obligation might be. 
Id. at 235. Likewise, in the Sun cases, several of the devices were amounts of possible future liabilities that
had been reasonably estimated. Id. at 233. In the present case, however, the amount of the incurred
liability was set by the parties to the agreement at $7 million. This is not an estimate or forecast, but a fixed,
exact, and precise obligation. The fact that Citicorp had the option of receiving even greater value through
the exercise of an option to receive common stock instead of the cash payments did not change Arch's
position. Furthermore, the statute requires only that the obligation be measured in an amount of money;
there is no requirement that it be satisfied in that amount of money. Arch's obligation was measured as
$7 million, but allowed Citicorp to require satisfaction in shares of common stock rather than cash. The
fact that Citicorp could choose a different form of satisfaction, however, namely conversion into common
stock, did not mean that the obligation was not measured in a certain amount of money.

 The Comptroller essentially bases its argument in favor of taxing the obligation in question
on the idea that if Citicorp exercised its conversion option, Arch's liability would be reduced or eliminated,
and therefore the obligation was contingent and uncertain in amount. We conclude that exercising the
conversion option would not have had the effect of reducing or eliminating Arch's obligation, but rather
would only have changed the form of how Arch's obligation must be satisfied. We do not read the wording
or construe the purpose of the 1987 amendments to be so broad as to include as surplus, instead of debt,
an obligation in which the obligee has the option of requiring satisfaction in cash or stock, as long as the
liability is itself measured in a certain amount of money. (5) Here, the liability was measured in a certain
amount of money, namely $7 million. Citicorp would be unlikely to exercise its conversion option unless
the common stock was worth at least that much. Arch's point of error is sustained.


CONCLUSION

 We conclude as a matter of law that Arch's obligation to Citicorp fell within the Tax
Code's definition of debt and should have been excluded from the calculation of Arch's surplus for
franchise tax purposes. Accordingly, we reverse the trial court's judgment and render judgment that the
Comptroller refund to Arch the sum of $227,111.16, together with the pro rata interest earned thereon
as provided for in Tex. Tax Code Ann. §112.060(a) (West Supp. 1998).



 

 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Jones and Kidd

Reversed and Rendered

Filed: December 18, 1997

Publish
1. Other statutorily required defendants were the State Treasurer and the State Attorney General. See
Tex. Tax Code Ann. §112.053(a) (West 1992 & Supp. 1998).
2. The parties eventually entered into a completely new agreement on December 31, 1990, in which the
preferred stock was exchanged for a combination of common stock, money, and accrued but unpaid
dividends.
3. For an oft-cited discussion of the distinction between debt and equity, including a list of sixteen
distinguishing factors, see Fin Hay Realty Co. v. United States, 398 F.2d 694, 696 (3d Cir. 1968).
4. State v. Sun Refining & Marketing, Inc., 740 S.W.2d 552 (Tex. App.--Austin 1987, writ denied);
State v. Sun Oil Co. (Delaware), 740 S.W.2d 556 (Tex. App.--Austin 1987, no writ).
5. Nor do we construe the amendments so narrowly that they apply only to the same specific type of
estimated or contingent liability accounts found in the Sun cases. See, e.g., Caterpillar, 932 S.W.2d at
235.



illar, on which both parties rely, this Court found that the obligation in question was
not for a certain amount of money, but rather was only a reliable estimate of what the obligation might be. 
Id. at 235. Likewise, in the Sun cases, several of the devices were amounts of possible future liabilities that
had been reasonably estimated. Id. at 233. In the present case, however, the amount of the incurred
liability was set by the parties to the agreement at $7 million. This is not an estimate or forecast, but a fixed,
exact, and precise obligation. The fact that Citicorp had the option of receiving even greater value through
the exercise of an option to receive common stock instead of the cash payments did not change Arch's
position. Furthermore, the statute requires only that the obligation be measured in an amount of money;
there is no requirement that it be satisfied in that amount of money. Arch's obligation was measured as
$7 million, but allowed Citicorp to require satisfaction in shares of common stock rather than cash. The
fact that Citicorp could choose a different form of satisfaction, however, namely conversion into common
stock, did not mean that the obligation was not measured in a certain amount of money.

 The Comptroller essentially bases its argument in favor of taxing the obligation in question
on the idea that if Citicorp exercised its conversion option, Arch's liability would be reduced or eliminated,
and therefore the obligation was contingent and uncertain in amount. We conclude that exercising the
conversion option would not have had the effect of reducing or eliminating Arch's obligation, but rather
would only have changed the form of how Arch's obligation must be satisfied. We do not read the wording
or construe the purpose of the 1987 amendments to be so broad as to include as surplus, instead of debt,
an obligation in which the obligee has the option of requiring satisfaction in cash or stock, as long as the
liability is itself measured in a certain amount of money. (5) Here, the liability was measured in a certain
amount of money, namely $7 million. Citicorp would be unlikely to exercise its conversion option unless
the common stock was worth at least that much. Arch's point of error is sustained.


CONCLUSION

 We conclude as a matter of law that Arch's obligation to Citicorp fell within the Tax
Code's definition of debt and should have been excluded from the calculation of Arch's surplus for
franchise tax purposes. Accordingly, we reverse the trial court's judgment and render judgment that the
Comptroller refund to Arch the sum of $227,111.16, togethe